United States District Court
Southern District of Florida

| | |
|---|---|
| United States of America, | ) |
| | ) |
| v. | ) |
| | ) Criminal Case No. 19-20450-CR-Scola |
| Alex Nain Saab Moran, | ) |
| Defendant. | ) |

**<u>Order Denying Motion to Vacate Order Conferring Fugitive Status and for Leave for Special Appearance to Challenge Indictment</u>**

This matter is before the Court on the Defendant Alex Nain Saab Moran's motion to vacate order conferring fugitive status and for leave for special appearance to challenge indictment. (ECF No. 10.) The Government opposes the motion. (ECF No. 24.) The Court held a hearing on the motion on March 15, 2021 at which the Government and counsel for Saab Moran appeared. After considering the parties' briefing and arguments, the record, and relevant legal authority, the motion is **denied. (ECF No. 10.)**

This case stems from Saab Moran's involvement in a scheme to bribe Venezuelan government officials in exchange for financial and business advantages. Saab Moran now seeks to challenge his fugitive status and requests to make a special appearance to contest the indictment against him without physically appearing in the Southern District of Florida.

**1. Background[1]**

On July 25, 2019, Saab Moran was indicted with one count of conspiring to launder money, in violation of 18 U.S.C. § 1956(h) and seven counts of money laundering in violation of 18 U.S.C. § 1956(a)(2)(A). (Indictment, ECF No. 1.) The indictment alleges that Saab Moran and his co-defendant Alvaro Pulido Vargas entered into a contract with the Government of Venezuela to build low-income housing. (Gov.'s Resp., ECF No. 24 at 2.) Saab Moran and other co-conspirators allegedly paid bribes to Venezuelan government officials to approve false invoices for services not performed and to approve the purchase of goods never provided. (*Id.*) As a result of these bribes, Saab Moran and Vargas received payment on the fraudulent invoices. (*Id.*) Saab Moran and his co-conspirators laundered the proceeds of their scheme through wire transfers totaling $350,041,500. (*Id.*) Saab Moran and Vargas distributed the funds using bank accounts in the Southern District of Florida. Saab Moran did not

---

[1] This order does not incorporate confidential facts included in the Government's ex parte additional facts filed under seal. (ECF No. 26.) The confidential facts have been shared with Saab Moran pursuant to a protective order and are discussed in the Court's sealed order denying Saab Moran's motion to vacate order conferring fugitive status and for leave for special appearance to challenge indictment. (ECF No. 45.)

make an initial appearance; accordingly, on August 26, 2019, the Court administratively transferred Saab Moran to fugitive status. (ECF No. 5.)

On June 12, 2020, Saab Moran was detained in the Republic of Cabo Verde pursuant to a provisional arrest warrant request by the United States. (ECF No. 24 at 4.) During the questioning after his arrest, Saab Moran acknowledged that he was aware of the charges against him in the United States and that he was the subject of an investigation in Colombia. (ECF No. 24-2.) Saab Moran explained that at the time he was detained he was a Venezuelan diplomat en route to a special mission in Iran. (*Id.*)

On June 21, 2021, the Government submitted an extradition request for Saab Moran. (ECF No. 24 at 5.) Saab Moran opposed the extradition request, which was heard before a Cabo Verdean court. (*Id.*) The court approved the extradition request. (*Id.*) That decision was affirmed on appeal. Saab Moran appealed the appellate court's decision affirming extradition and that appeal remains pending before the Cabo Verdean Supreme Court. During this time, Saab Moran was transferred to house arrest.

Simultaneously, Saab Moran moved the Economic Community of West African States ("ECOWAS") to deny the Government's extradition request. (Def.'s Notice, ECF No. 43.) The ECOWAS granted Saab Moran's motion, finding that his detention is unlawful because it violates his human rights, and noting that at the time of his arrest, Saab Moran enjoyed diplomatic immunity against the charges against him. (*Id.*) Currently, judicial proceedings are ongoing in Cabo Verde to determine whether the ECOWAS's order is binding on the Cabo Verdean courts, thus requiring Saab Moran's release, or whether he will be extradited to the United States.

### 2. Analysis

Without appearing in the Southern District of Florida, Saab Moran moves to vacate this Court's order conferring fugitive status. (ECF No. 10.) Saab Moran argues that the fugitive disentitlement doctrine, which serves to limit access to courts to persons who have fled a criminal conviction in the United States, does not apply to his case for three reasons: (1) he was never in the United States; (2) his challenges to the indictment are "fundamental;" and (3) he is a diplomat of Venezuela who is entitled to immunity. Alternatively, if the Court finds the doctrine inapplicable to this case, Saab Moran asks the Court to use its discretion to allow a special appearance to move to dismiss the indictment.

The Government opposes this motion arguing that Saab Moran is a fugitive and the fugitive disentitlement doctrine bars his attempt to challenge the indictment without first appearing in this district. The Government also contends that the circumstances here do not warrant a special appearance.

#### A. Fugitive Disentitlement Doctrine

"The fugitive disentitlement doctrine limits access to courts by a fugitive who has fled a criminal conviction in a court in the United States." *Magluta v. Samples*, 162 F.3d 662, 664 (11th Cir. 1998). An equitable doctrine, it reflects

the principle that a fugitive "demonstrate[s] such disrespect for the legal process[ ] that he has no right to call upon the court to adjudicate his claim." *Ener v. Martin*, 987 F.3d 1328, 1331–32 (11th Cir. 2021).

Saab Moran is a fugitive. A party is a fugitive if he intentionally avoids arrest by fleeing, hiding within, or remaining absent from the jurisdiction. *Ener*, 987 F.3d at 1332. The Eleventh Circuit recognizes the doctrine of constructive flight, in that "a defendant need not leave the jurisdiction for the doctrine of fugitive disentitlement to apply. While legally outside the jurisdiction, the defendant may constructively flee by deciding to not return." *United States v. Shalhoub*, 855 F.3d 1255, 1263 (11th Cir. 2017) (citing *United States v. Barnette*, 129 F.3d 1179, 1184 (11th Cir. 1997)).

Here, Saab Moran does not dispute that he was aware of the indictment before he was detained and does not dispute that he has not appeared in this case. Rather, Saab Moran, relying on *In re Hijazi*, 589 F.3d 401 (7th Cir. 2009), argues that he is not a fugitive because he does not live in the United States, has not traveled to the United States, and does not own property here. (ECF No. 10 at 8.) In *Hijazi*, the defendant faced criminal charges in the United States. 589 F.3d at 403. Hijazi voluntarily surrendered to Kuwaiti authorities, but Kuwait refused to extradite him. *Id.* at 405. Hijazi filed a motion to dismiss the indictment through attorneys in the United States. *Id.* The district court denied his motion, reasoning that Hijazi had little to lose from filing the motion and mutuality concerns undergirding the fugitive disentitlement doctrine required that his motion be denied. *Id.* The Seventh Circuit reversed explaining that the fugitive disentitlement did not preclude a ruling on Hijazi's motion because he had never stepped foot in the jurisdiction and thus, he did not flee. *Id.* at 412. Hijazi's voluntary surrender to Kuwaiti authorities and their ability to extradite him if they so wished, led the appellate court to conclude that the fugitive disentitlement doctrine did not apply.

While *Hijazi* identifies one instance in which a court refrained from invoking the fugitive disentitlement doctrine, the Eleventh Circuit has declined to follow the Seventh Circuit. In *Shalhoub*, the Eleventh Circuit declined to apply *Hijazi* and held that the district court did not err in applying the fugitive disentitlement doctrine to deny the defendant's motion to dismiss the indictment. 855 F.3d at 1264-65. The court reasoned that if Shalhoub wanted to challenge the indictment against him, he need only to submit himself to the jurisdiction of the district court. Here too, the Court finds that *Hijazi* is not controlling. Saab Moran has been aware of the charges against him for almost two years and has had ample opportunity to present himself to United States authorities. He has declined the Government's request to do so. This is sufficient to constitute constructive flight. *United States v. Itriago*, No. 13-20050-CR, 2019 WL 1232128, at *2 (S.D. Fla. Feb. 8, 2019), *report and recommendation adopted*, No. 13-20050-CR, 2019 WL 1228000 (S.D. Fla. Mar. 15, 2019) (Hunt, MJ) (applying fugitive disentitlement doctrine and finding that although defendant had never been in the jurisdiction, he had constructively fled because he had known about the charges against him for years and had

ample opportunities to enter the jurisdiction and face the inducement and chosen against it).

Moreover, unlike *Hijazi*, Cabo Verde does not oppose extradition—on the contrary two Cabo Verdean courts have ordered it. Saab Moran's arrest in Cabo Verde and the extradition proceedings underway weigh in favor of applying the doctrine against him. Saab Moran remains on house arrest in Cabo Verde pending resolution of the extradition and the proceedings regarding the jurisdiction of the ECOWAS. Accordingly, there is minimal risk that denying the subject motion will unduly harm Saab Moran through a multi-year impasse. *See United States v. De Morales Sante*, No.12-20663, Supplemental Report and Recommendation (ECF No. 241) (S.D. Fla. Feb. 12, 2018), *report and recommendation adopted* (ECF No. 259) (S.D. Fla. Oct. 31, 2018) (Hunt, MJ). Either Saab Moran will be extradited to the United States at which time he can challenge the charges against him, or he will continue avoiding this Court's jurisdiction by refusing to appear in this district thereby delaying his own defense.

Saab Moran also argues that under *Hijazi*, the doctrine does not apply in this case because his challenges to the indictment are "fundamental," particularly his forthcoming argument that the indictment should be dismissed because he is a diplomat of Venezuela entitled to immunity. (ECF No. 10 at 8.) Saab Moran's reliance on *Hijazi* is misplaced for the reasons discussed above. Moreover, Saab Moran has not cited a case where the doctrine was not applied simply because a defendant intended to challenge the indictment on diplomatic immunity grounds. It is worth repeating: if Saab Moran wishes to raise "fundamental" challenges to the indictment, he may physically appear in this district as the Government has repeatedly requested.

Relatedly, Saab Moran contends that the doctrine is inapplicable here because "[a]side from having no reason to come to the United States on his own volition, Mr. Saab has been ordered to resist this prosecution and extradition because the Venezuelan government opposes it." (ECF No. 10 at 8.) Saab Moran does not cite to any authority supporting that proposition.

Accordingly, the Court finds that the fugitive disentitlement doctrine applies in this case and prevents Saab Moran from challenging his fugitive status or future challenges to his indictment. Accordingly, the motion is denied on this ground.

### B. Request for Special Appearance

Saab Moran alternatively argues that even if the fugitive disentitlement doctrine applies to this case, the Court, using its discretion, should permit a special appearance to challenge his fugitive status and the indictment. Saab Moran contends that this case, like *United States v. Noriega*, 683 F. Supp. 1373, 1373 (S.D. Fla. 1988), presents extraordinary circumstances which warrant a special appearance: Chiefly, that he is a diplomat and as such is entitled to immunity and the case is fraught with political undertones. (ECF No. 10 at 10-11.)

The Court is not inclined to find that such special circumstances are present here. Unlike *Noriega*, where the court had no expectation that the defendant would ever appear in the case, here, there are ongoing extradition proceedings, which up to this point have come out against Saab Moran. Additionally, while Saab Moran argues that he is immune from the charges against him and that he has been ordered by the Government of Venezuela to avoid appearance in this case, the Court is unconvinced that these facts rise to the political undertones in *Noriega*. Saab Moran's unwillingness to submit to the Court's authority, coupled with the inequity of allowing Saab Moran to challenge the indictment without having to submit to this Court's jurisdiction and the prejudice against the Government, does not justify a special appearance in this case. *See United States v. Shalhoub*, No. 98-CR-00460, 2016 WL 8943847, at *2 (S.D. Fla. Jan. 26, 2016) *aff'd, Shalhoub*, 855 F.3d 1255.

### 3. Conclusion

For these reasons, Saab Moran's motion is **denied**. **(ECF No. 10.)** Saab Moran is precluded from attacking his fugitive status and indictment until he is physically present in this jurisdiction.

**Done and ordered** in Miami, Florida on March 18, 2021.

Robert N. Scola, Jr.
United States District Judge