# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 19-cr-20450-SCOLA/TORRES

UNITED STATES of AMERICA,

    Plaintiff,

v.

ALEX NAIN SAAB MORAN,

    Defendant.

_____/

## **MOTION TO ENFORCE RULE 53 AND TO LIMIT ZOOM ACCESS**

The Defendant, ALEX NAIN SAAB MORAN, moves the Court to enforce Rule 53 of the Federal Rules of Criminal Procedure and states:

### I.    BACKGROUND

Mr. Saab, a Venezuelan diplomat, is a polarizing figure on a global stage and his legal battles following his arrest garnered international media attention. On October 18, 2021, Mr. Saab made his initial appearance before Magistrate Judge John O'Sullivan ("Initial Appearance"). The Court conducted the hearing via Zoom with Mr. Saab appearing from the Federal Detention Center. The Defendant's lawyer and counsel for the Government appeared via Zoom as well. In addition to those necessary participants, over three hundred persons signed into the Court's Zoom link to observe the hearing. Many or perhaps most of them were members of the press covering Mr. Saab's case; others were bloggers or individuals, many of whom were anxious to

publish photographs and videos of Mr. Saab. Mr. Saab is intensely disliked in our community because of his relationship with the Venezuelan government.

Aware of the significant local and international interest in Mr. Saab's case and recognizing the hundreds of persons joining the video Zoom hearing to watch the proceedings, Judge O'Sullivan, in direct and clear terms, reminded the multitude in attendance that they were strictly prohibited by federal law from photographing, video-recording, and broadcasting court proceedings. Nevertheless, dozens of media outlets and others ignored the Court's instructions and photographed and videorecorded Mr. Saab's Initial Appearance. Those photographs and recordings containing images of Mr. Saab wearing prison garb and shackled inside of the Federal Detention Center were then published across the nation and the world. While legitimate and reputable news organizations adhered to federal law, many others did not. Attached as Exhibit "A" is a list of just some of the media outlets and others who published photographs and videos of Mr. Saab from the Federal Detention Center during his Initial Appearance.

## II. ARGUMENT

### A. RULE 53 PROHIBITS PHOTOGRAPHING, VIDEORECORDING, AND BROADCASTING DISTRICT COURT CRIMINAL PROCEEDINGS.

The Court's authority to prohibit recordings and photographs of court proceedings in his courtroom is found in Federal Rule of Criminal Procedure 53. Rule 53 provides: "Except as otherwise provided by a statute or these rules, the court *must not permit* the taking of photographs in the courtroom during judicial proceedings or the broadcasting of judicial proceedings from the courtroom." Fed. R. Crim. P. 53

(emphasis added).[1] "The words 'shall not be permitted' make clear that this rule is mandatory, leaving the Court with no discretion to ignore the categorical ban." *United States v. Moussaoui*, 205 F.R.D. 183, 184 (E.D. Va. 2002). While the press and the public have the right to observe criminal trials, "Rule 53 [cannot be] rewritten or finessed through technical hairsplitting." *See id.* (citing *United States v. Hastings*, 695 F.2d 1278, 1284 (11th Cir. 1983) (rejecting a First Amendment Challenge to Rule 53). But the public's right to observe a criminal trial is a right to attend "rather than a license allowing cameras or tape-recorders into the courthouse" *United States v. Hernandez*, 124 F. Supp. 2d 698, 702 (S.D. Fla. 2000) (citing *Hastings*, 695 F.2d 1278 at 1280).

"Section 15002(b) of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), enacted on March 27, 2020, authorizes the broadcasting of certain criminal proceedings virtually (including, detention hearings, initial appearances, preliminary hearings, waivers of indictment, arraignments, probation and supervised release revocation proceedings, pretrial release revocation proceedings, and felony pleas and sentencings, among others). . . ." *United States v. Gordon*, EP-20-CR-00226-DCG, 2021 WL 1820690, at *1 (W.D. Tex. May 6, 2021) (citing CARES Act, Pub. L. No. 116-136, § 15002(b)). But this accommodation, necessary only because the COVID-19 pandemic, does not otherwise suspend Rule 53's prohibitions against photographing, videorecording and broadcasting district court criminal proceedings.

---

[1] Local Rule 77.1 likewise prohibits the taking of photographs and videos inside of courtrooms.

3

While the realities associated with the COVID-19 pandemic has forced the courts to hold certain proceedings via Zoom, it is not a license to disregard and violate Rule 53's prohibition on recording or photographing district court criminal proceedings with the intent to publish the images to the public.

While public access to judicial proceedings has long been enshrined as a component of our justice system "[t]he right of access is not absolute" and "may be tempered by a defendant's right to a fair trial." *Moussaoui*, 205 F.R.D. 183, 186.[2] "Further, the Judicial Conference of the United States has consistently reaffirmed throughout the years its opposition to permit criminal courtroom proceedings in district courts to be broadcasted, televised, recorded, or photographed for the purpose of public dissemination." *Gordon*, EP-20-CR-00226-DCG, 2021 WL 1820690, at *1.[3] After a three-year pilot program, where The Judicial Conference considered a recommendation for broadcasting of civil proceedings in federal district and circuit courts, it reaffirmed the intimidating effect of camaras in the courtroom and disapproved a proposed amendment to Rule 53. *See id.*

---

[2] Citing *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 606, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); *Westmoreland v. Columbia Broadcasting System, Inc.,* 752 F.2d 16, 19 (2nd Cir.1984); *Press–Enterprise Co. v. Superior Court,* 478 U.S. 1, 14–15, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986).

[3] *Citing e.g.*, Annual Report of the Proceedings of the Judicial Conference of the United States, March 8-9, 1962, p. 10; Chief Justice William H. Rehnquist, Judicial Conference of the United States, Report of the Proceedings of the Judicial Conference of the United States, Washington, DC, September 20, 1994, p. 46, 67 at http://www.uscourts.gov/file/2120/download; Chief Justice William H. Rehnquist, Judicial Conference of the United States, Report of the Proceedings of the Judicial Conference of the United States, Washington, DC, March 12, 1996, p. 17, at http://www.uscourts.gov/file/2119/download.

Although Zoom, and similar video platforms, have become necessary tools during the pandemic, Rule 53's prohibitions remain in place. While there may be a temptation to rationalize that less intrusive modern technology renders Rule 53's prohibitions less important, the opposite is true. *See Moussaoui*, 205 F.R.D. 183 at 186. The *Moussaoui* court, whose reasoning in 2002 seems prescient, stated as follows:

> Advances in broadcast technology, however, have also created new threats to the integrity of the fact-finding process. The traditional public spectator or media representative who attends a federal criminal trial leaves the courtroom with his or her memory of the proceedings and any notes he or she may have taken. These spectators do not leave with a permanent photograph.[4] However, once a witness' testimony has been televised, the witness' face has not just been publicly observed, it has also become eligible for preservation by VCR or DVD recording, digitizing by the new generation of cameras or permanent placement on Internet web sites and chat rooms. ***Today, it is not so much the small, discrete cameras or microphones in the courtroom that are likely to intimidate witnesses, rather, it is the witness' knowledge that his or her face or voice may be forever publicly known and available to anyone in the world.***

*Id.* at 186–87 (emphasis added).

The *Moussaoui* court's rationale applies with even greater significance in today digital climate. With Zoom technology, the fear that a witness's or defendant's face or voice *may* be at some time publicly available is replaced with the certainty, as it was in this case, that it *will be immediately available and immediately circulated worldwide*. And while the *Moussaoui* court focused on witnesses, Rule 53's prohibitions apply to all criminal court proceedings and to witnesses and defendants alike.

5

The widespread publication of Mr. Saab's images at the Initial Appearance confirms the need to enforce the requirements of Rule 53 under the circumstances presented in this highly publicized case. Just minutes after the Initial Appearance concluded, photographs and videos of Mr. Saab sitting at the Federal Detention Center proliferated throughout the internet. *See* Ex. A.

### B. THE VIOLATORS ACTED WILLFULLY.

Here, despite Judge O'Sullivan's explicit order that the Defendant's court proceedings may not be photographed and recorded, the media members and others listed in Exhibit "A," and countless others, did exactly what Judge O'Sullivan prohibited them from doing and published videos and photos of Mr. Saab participating in the court hearing while he was in custody. In willful contempt of the Court's order and Rule 53, those images have been published far and wide. It is concerning that so many would so willfully defy the Court's commands only minutes after the Court specifically issued a warning in open court. The Court should not permit such contemptuous conduct and act to ensure that it not happen again.

### C. THE COURT SHOULD TAKE APPROPRIATE STEPS TO ENSURE COMPLIANCE WITH RULE 53.

Understandably, the balancing tension between public access and the prohibitions regarding the photographing and recording of court proceedings, in this age-of-the-pandemic, is challenging. Nevertheless, the Court can and should take proactive steps to prevent future public dissemination of Zoom video images of court proceedings. Early in the pandemic one District Court implemented the following

6

procedures to exert rational control over the proceedings.

> The Court further intends to issue a limited number of authorizations to access the trial remotely. Those wishing to attend trial remotely may apply in advance. The Court will issue notices to the public as the trial date approaches. At this point, the Court anticipates notifying the public that they may listen to, or watch, the proceedings (as appropriate) by calling a particular telephone number, or joining a particular video conference. These participants will be reminded of and required to agree to the general prohibitions against photographing, recording, or broadcasting court proceedings. This procedure is intended to increase access to the trial proceedings, reduce costs, and alleviate the barriers inherent in requiring people to travel to the courthouse to access the viewing room during the pandemic.

*United States v. Babichenko*, 508 F. Supp. 3d 774, 780–81 (D. Idaho 2020). Considering the willful violations which have already occurred in the case at hand, the Court should consider taking similar steps.

The right to public access to criminal trials (and other district court criminal proceedings) is not absolute. *Globe Newspaper Co. v. Superior Court for Norfolk County*, 457 U.S. 596, 606 (1982). And here, Mr. Saab is not seeking to eliminate public access, which is of constitutional stature, but rather, requests that the Court play a gatekeeping role to prevent further Rule 53 violations. *See id.* The *Moussaoui* court wrestled with the tension between public access to district court criminal proceedings versus adherence to Rule 53. *See generally Moussaoui*, 205 F.R.D. 183. There, the defendant was an alleged "member of the al Qaeda conspiracy to blow up the World Trade Center in Manhattan and government buildings in the Washington, D.C. area . . . ." *Id.* at 184. The Intervenors in the *Moussaoui* case asked that "the court to ignore or declare unconstitutional the well-established ban on photographing and broadcasting federal criminal pretrial and trial proceedings." *Id.* The *Moussaoui*

7

court addressed the juxtaposition of public access to courts and Rule 53 as follows:

> We are very aware of the extensive, legitimate public interest in this case, and understand that many thousands of people in this country and throughout the world, suffered devastating losses on September 11, 2001. It is understandable that they might want to watch this trial. However, contrary to what intervenors have argued, the purpose of this trial is not to provide catharsis to the victims or to educate the world about the American legal system. Instead, the purpose is to determine the innocence or guilt of this defendant for the specific crimes charged in the Indictment. It remains a bedrock principle of our legal system that the courts have the right "to conduct their business in an untrammeled way." *Wood v. Georgia,* 370 U.S. 375, 383, 82 S.Ct. 1364, 8 L.Ed.2d 569 (1962). ***To ensure that both this defendant and the United States receive a fair and orderly trial, none of these proceedings should be photographed or broadcast in any form.***

*Moussaoui*, 205 F.R.D. at 188 (emphasis added).

Some restrictions to hearings conducted over Zoom are necessary here because of the widespread public focus on this case. Ultimately, Mr. Saab is asking only that the Court enforce Rule 53 and prevent the publication of photographs and videos which Rule 53 prohibits. In other words, as described by the *Moussaoui* court, he is asking that he be treated fairly and in a dignified manner. *See id.*

We are aware that the Court's resources are limited and that policing hundreds of Zoom participants is difficult to administer. As such, Mr. Saab requests that video access to future hearings be limited to only necessary parties, the Defendant's family, and reputable news organizations with a proven record of abiding by Rule 53's requirements. The public should also be permitted access, but only via a conference call dial-in to prevent further Rule 53 violations. With accredited press permitted video access to the courtroom and members of the public able to listen on the phone, the right to public access to the court proceedings will be balanced with Mr. Saab's

8

rights as embodied in Rule 53.

Courts in the Southern District of New York have applied a similar protocol in cases with significant public attention and have required both members of the press and the public to attend only via telephonic conference. *See* Order Setting Arraignment, Initial Conference, and Bail Hr'g, *United States v. Maxwell*, No. 1:20-CR-00330 (S.D.N.Y. July 9, 2020), ECF No. 16 (preventing public from viewing video proceedings where the defendant was detained, and instead, providing a public telephone line for the public to listen to court hearings); Paperless Notice of Change of Plea H'rg, *United States v. Parnas*, No. 1:19-CR-00725 (S.D.N.Y. Oct. 28, 2020) (providing a public telephone conference line to the public for Zoom change of plea hearing); Order Setting Telephone Conference, *United States v. Avenatti*, No. 1:19-CR-00373 (S.D.N.Y. Jan. 14, 2020), ECF No. 143 (providing the public with a telephone conference line to listen to ongoing pre-trial hearings); *see also* Paperless Order Setting Telephone Conference, *United States v. Calk*, Case No. 1:19-CR-00366 (S.D.N.Y. Mar. 25, 2021) (requiring both "[m]embers of the press and public" to dial into a conference call number).

### D. The Court May Refer the Violators to the United States Attorney for Investigation and Enforcement.

To enforce Rule 53 and send an appropriate deterrent message the Court may consider referring those listed in Exhibit "A" to the United States Attorney for investigation or issue an order to show cause why they should not be held in contempt. Admittedly, holding many of the international or foreign offenders accountable would be a difficult and impractical task. Further, Mr. Saab and his lawyers must get on

with task of defending the case against him. Nevertheless, given Judge O'Sullivan's *explicit* warnings, the Rule 53 violations here were especially willful and the Court would be acting within its sound discretion should it decide to take further action.

Meet-and confer. Undersigned counsel conferred with counsel for Government, and, while the Government opposes the specific relief requested in this motion, it does nevertheless agree that the Court should explore those steps which it may take to avoid future Rule 53 violations.

WHEREFORE, the Defendant, Alex Nain Saab Moran, respectfully request that the Court take reasonable steps to prevent further Rule 53 violations by requiring the public to access future hearings via telephone and limiting video access to only necessary parties, Mr. Saab's family, and a limited number of accredited press organizations with a demonstrated record of adhering to the restrictions of Rule 53 and who affirm that they will comply with Rule 53 before being admitted video access to any hearings conducted over Zoom.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on October 26, 2021 a true and correct copy of the foregoing has been furnished electronically via CM/ECF to all counsel of record.

[*Signature block on following page*]

Respectfully Submitted,

**BELL ROSQUETE REYES ESTEBAN, PLLC**
999 Ponce De Leon Blvd.,
Suite 1120 PH
Coral Gables, Florida 33134
Telephone: (305) 570-1610
Facsimile: (305) 570-1599
Henry P. Bell, Esq.
Florida Bar No. 090689
hbell@brresq.com
Armando Rosquete, Esq
Florida Bar No. 648434
arosquete@brresq.com
Javier A. Reyes, Esq.
Florida Bar No. 688447
jreyres@brresq.com
*Counsel to the Defendant, Alex Nain Saab Moran*

By: */s/ Henry P. Bell*
      Henry P. Bell