```
 1                      UNITED STATES DISTRICT COURT
                        SOUTHERN DISTRICT OF FLORIDA
 2
                          CASE NO. 19-20450-CR-SCOLA
 3
     UNITED STATES OF AMERICA,
 4                                          Miami, Florida
                    Plaintiff(s),
 5                                          February 16, 2022
            vs.
 6
     ALEX NAIN SAAB MORAN,
 7
                    Defendant(s).
 8   ----------------------------------------------------------

 9                         STATUS CONFERENCE
              BEFORE THE HONORABLE ROBERT N. SCOLA, JR.
10                  UNITED STATES DISTRICT JUDGE

11   APPEARANCES:

12   FOR THE PLAINTIFF(S):   Kurt Lunkenheimer, Esquire
                             United States Attorney's Office
13                           99 North East Fourth Street
                             Miami, Florida 33132
14
                             Alexander J. Kramer, Esquire
15                           United States Department of Justice
                             1400 New York Avenue, NW
16                           Washington, D.C. 20005

17
     FOR THE DEFENDANT(S):   Neil M. Schuster, Esquire
18                           Joseph Schuster, Esquire
                             555 Northeast 15th Street
19                           Suite 2-C
                             Miami, Florida 33132
20


21
     REPORTED BY:            Tammy Nestor, RMR, CRR
22                           Official Court Reporter
                             400 North Miami Avenue
23                           Miami, Florida 33128
                             tammy_nestor@flsd.uscourts.gov
24


25
```

```
 1   The following proceedings began at 8:30 a.m.:

 2            THE COURT:  Good morning, everyone.  Welcome.  Please

 3   be seated.

 4            Our first matter this morning is United States of

 5   America versus Alex Saab Moran.

 6            Who is here for the government?

 7            MR. LUNKENHEIMER:  Good morning, Your Honor.

 8   Assistant United States Attorney Kurt Lunkenheimer on behalf of

 9   the United States.  With me at counsel table is DOJ Trial

10   Attorney Alexander Kramer, DEA Special Agent William Callo, and

11   DEA Task Force Officer Francisco Ricon.

12            THE COURT:  Good morning.

13            Who is here for the defense?

14            MR. NEIL SCHUSTER:  Neil Schuster appearing on behalf

15   of the defendant, who is present before Your Honor.  And may I

16   introduce Joseph Schuster, who is working with me on this case.

17            MR. JOSEPH SCHUSTER:  Good morning, Your Honor.  Nice

18   to see you.

19            THE COURT:  Good to see you again.

20            Good morning, everyone.

21            It's my understanding that both parties wish to have

22   at the outset of this hearing a sealed discussion with the

23   Court concerning certain matters that were previously filed

24   under seal.  Is that correct?

25            MR. NEIL SCHUSTER:  Yes, Your Honor.
```

1          THE COURT:  Ordinarily, I would have that discussion

2     at sidebar.  But in light of the number of people that would be

3     at sidebar and COVID and the fact that I would also want

4     Mr. Saab to be included in those discussions, I am going to

5     start the hearing by having that sealed hearing in open court.

6          So, therefore, I am going to ask anybody who is not

7     part of the case to wait outside.  And I know that it is

8     frowned upon to exclude the public from hearings.  I am going

9     to do everything I can to limit, if not eliminate, sealed

10    hearings.  But I am going to give the attorneys an opportunity

11    to explain to me why these discussions have to be sealed first.

12         So anybody who is not part of the case, please wait

13    outside.  As soon as we finish our sealed discussion, we will

14    allow you to come back in.

15         If you are fully vaccinated and you wish to do so, you

16    may remove your masks.  You don't have to, but you may.

17         (The courtroom was cleared.)

18    THE COURT:  So we are here in open court.  Only the

19    attorneys and the defendant and the court staff are present.

20         Tammy, until I say otherwise, this discussion from

21    this point forward will be under seal.

22         Okay.  Who wants to address the Court first?

23    MR. NEIL SCHUSTER:  Thank you, Your Honor.  May I

24    approach?

25         THE COURT:  Yes.  And I really want to limit the

1   discussion that's under seal to why it has to continue to be

2   under seal, because every word we are saying is prohibited --

3   we are prohibiting the public from knowing what we are talking

4   about.  So let's get to the nub of why we really need to

5   continue to seal these matters.

6        MR. NEIL SCHUSTER:  Your Honor, we recognize that

7   there is a presumption of public access and the press right to

8   know unless there's sufficient justification otherwise.

9        We want to move for bond.  Your Honor knows the

10  history of this case, and Your Honor knows that the history of

11  this case includes a course of cooperation from 2016, 2017,

12  2018, and 2019.

13       We intend to present a lengthy bond motion explaining

14  why but not addressing whatsoever his past cooperation.  Your

15  Honor is aware from the sealed entry document 26, where the

16  government provided compelling reasons, pages 1 through 5, why

17  they needed to seal the facts surrounding the defendant's past

18  cooperation.

19       THE COURT:  That was a year ago.

20       MR. NEIL SCHUSTER:  Yes, Your Honor.

21       THE COURT:  Okay.  So why -- if people are concerned

22  about the safety of other people, it's been a year to make

23  arrangements for those other people to take whatever actions

24  they can.

25       MR. NEIL SCHUSTER:  The defendant's wife and five

1    children still reside in Venezuela.  The Venezuelan government

2    is still a powerful entity.

3              THE COURT:  What have they done to try and leave

4    there?  What are they going to do in the next year?

5              You are going to have a hearing where you have

6    somebody who is from Colombia, working for Venezuela, went to

7    Iran, gets arrested in Africa, fought extradition, and I am

8    going to have a hearing, okay, and all those things are not in

9    favor of giving somebody a bond on a huge case --

10             MR. NEIL SCHUSTER:  And we recognize that.

11             THE COURT:  -- and now not going to say, oh, there are

12   other matters the judge considered and he's giving him a bond

13   when nobody knows why the heck this guy is getting a bond when

14   otherwise it would seem like nobody in that position should get

15   a bond.

16             MR. NEIL SCHUSTER:  We recognize that the government

17   is going to have a good argument to make to this Court

18   independent of his cooperation history, independent of whatever

19   he did seriously to help the government.  They are going to

20   have an argument, and they are going to take the position that

21   there is a likelihood that he's going to flee, that he doesn't

22   have --

23             THE COURT:  That's not what I'm concerned about.  I'm

24   concerned about you are going to make an argument, okay,

25   that's --

1          MR. NEIL SCHUSTER:  I am not going to address that,

2    Your Honor.  But if the government --

3          THE COURT:  So you are going to have all this evidence

4    that this guy is a flight risk, he's involved in this humongous

5    crime, he's tried it, he fought extradition, and the judge

6    inexplicably grants him a bond?

7          MR. NEIL SCHUSTER:  Your Honor, I am going to provide

8    a motion with compelling reasons including the cases of dozens

9    of other Venezuelans and others charged in money laundering and

10   foreign corrupt practice act violations who all received bond.

11   I am going to provide to the Court compelling reasons why he

12   should be released independent of whatever he's done in the

13   past.

14         With regard to what he's done in the past, the

15   important thing is that Your Honor is aware of it, and Your

16   Honor will be fully aware of it because it's already been

17   presented in DE26, which is sealed.

18         THE COURT:  Okay.  So let me go back to my first

19   question.

20         MR. NEIL SCHUSTER:  Yes, Your Honor.

21         THE COURT:  So no arrangements have been made to get

22   his family out?  Are arrangements being made to get his family

23   out?  If that's not going to be made, whether it's one year

24   from now -- I can't seal records forever.  Even if I were going

25   to seal it, it would be for a finite period of time like until

1   the trial begins, until the case is over, until the appeal is

2   over.  There's got to be some limit to the time period.  Okay.

3   So if his family is never going to leave, I am not going to

4   seal this forever.

5           MR. NEIL SCHUSTER:  Your Honor, it was my

6   understanding, and perhaps I am incorrect, that the rules

7   provide for the documents or record to be unsealed within a

8   year or destroyed.

9           THE COURT:  No.  I can seal records for -- sometimes

10  people file their medical records in support of a motion for

11  compassionate release, and they have a 20-year sentence.  It

12  doesn't make any sense to destroy them after one year because

13  they may file a second motion or there might be some other

14  issue.

15          So I will say, okay, for the next 20 years, they are

16  sealed, but then, since you are going to be out of jail, then

17  we will have them destroyed by the clerk or unsealed and made

18  public.  But some things you never -- like somebody's medical

19  records, they should never be unsealed perhaps because they are

20  personal to that defendant.

21          MR. NEIL SCHUSTER:  Your Honor, I wish I could speak

22  to the required duration at this point in time, and I will

23  certainly get back to the Court on that issue.  The importance

24  from our perspective is that in the same manner that the Court

25  ordered docket entry 26 sealed and it contains the substance,

1   the substance, of what the government would otherwise want to

2   present.

3          And we are not going to object to the fact that he did

4   not surrender.  We are not going to object to the factual

5   assertion that he did not surrender after cooperating for those

6   many years.  We just don't see any need for it to be public

7   under the circumstances where his family and children are still

8   in Venezuela.

9          THE COURT:  So you still haven't answered my question.

10  When are they leaving Venezuela?

11         MR. NEIL SCHUSTER:  I can't answer that right now,

12  Your Honor.

13         THE COURT:  All right.  What is the government's

14  position on this issue?

15         MR. KRAMER:  Thank you, Your Honor.

16         Your Honor, the government opposes any continued

17  sealing filings about this matter.  The basic reasons, I think,

18  are some of the ones you articulated in some of your questions.

19         First, to get back to the matter of the sealing on

20  docket entry 26, the government moved to seal that because, at

21  the time, the government was concerned that, as the Court may

22  remember, we weren't sure exactly who was acting on behalf of

23  Mr. Saab at that time.  There were some questions on behalf of

24  the government as to whether or not counsel was representing

25  his best interests.  And regardless of whether they were, the

1    communications to Mr. Saab at the time in Cabo Verde would have

2    to be communicated through a third party that could then get

3    back to Venezuela.  So we had those concerns.  Always been a

4    problem.  Fair enough.

5         The other issue that I think is different here is

6    Mr. Saab is now before the Court.  Mr. Saab has the ability to

7    make those decisions, and he is making them knowing actually

8    what can go.  So the government's concern that he might be --

9    you know, others might be acting on his behalf no longer

10   exists.  I think the main purpose for the government sealing

11   docket entry 26 is no longer as valid.

12        Second, the government has made overtures through

13   defense counsel to potentially try to assist Mr. Saab's family

14   in coming here or leaving Venezuela.  So we have not been taken

15   up on those offers.  And obviously they do not have to.  But I

16   think, again, it goes to some of the concerns or effects here

17   of whether or not there is actually a concern of safety or an

18   actual attempt to remove the family from Venezuela.

19        I would also like to point out here that, you know,

20   the main reason we oppose is the public does have this right to

21   a free and open court hearing with these facts becoming public.

22   There can be an overarching interest, but that has to be an

23   articulated interest and it has to be an articulated specific

24   interest, here presumably the safety of the family.

25        We haven't actually heard that articulated specific

1    interest other than Venezuela is a powerful country.  In fact,

2    the facts of Mr. Saab's cooperation have become public through

3    other aspects.  There was a filing in the Eastern District of

4    New York where someone filed -- defense counsel in the case

5    filed a portion of their sentencing memo in the Baggley case

6    that referred to Mr. Saab's cooperation.  It was quickly taken

7    down, but it was immediately reported on by the AP, by Reuters,

8    and become public information that he was, in fact,

9    cooperating.

10         Counsel for Mr. Saab, not counsel present here but

11   other counsel, commented on that and stated that, you know,

12   everything Mr. Saab did was at the behest of the Maduro

13   government.

14         That occurred in, I believe, November, November 10th

15   of last year.  We have not seen any, you know, increased danger

16   or increased fear of danger on behalf of the family or anything

17   like that.  So, you know, again, we are just not seeing the

18   articulated interest in public safety that would move the

19   government to join something like this.

20         And, in fact, we would oppose because we do believe

21   that this is going to be an issue that the public deserves a

22   right to hear about.  And moreover, it's going to come up, not

23   just at this bond hearing, but inevitably, if the Eleventh

24   Circuit moves back down the diplomatic immunity piece and we

25   have a hearing on that, it will become a core part of our

1   diplomatic immunity hearings.  It will obviously become a core

2   part of our trial and very likely any pretrial briefing.

3          So, you know, our concern here would be that this will

4   just continually be something that has to be maintained under

5   seal but will continually be coming up at the forefront of this

6   and any number of future proceedings.

7          THE COURT:  Mr. Schuster, I will give you the last

8   word on this issue.

9          MR. NEIL SCHUSTER:  With the Court's permission?

10         THE COURT:  Okay.

11         MR. JOSEPH SCHUSTER:  Thank you, Your Honor.

12         The points that the government has made, that in the

13   last year or half a year, that there is no more danger because

14   this was inadvertently released in a separate case in a

15   different district, it's quite a different thing when that

16   information is validated by the government and put forward

17   affirmatively confirming that Mr. Saab has worked as a

18   cooperator for a long time.  The danger is still there.

19         Counsel --

20         THE COURT:  To whom?

21         MR. JOSEPH SCHUSTER:  To Mr. Saab and his family.

22         THE COURT:  He's in custody.

23         MR. JOSEPH SCHUSTER:  Your Honor, he is in custody,

24   but it is also, as we discussed earlier, if the Court were able

25   to prospectively seal this for a longer period of time --

1          THE COURT:  Like what period of time?  Obviously, if

2   he wins the case, he is going to go free.  Let's assume he

3   either pleads guilty or goes to trial and ultimately there is a

4   sentencing.  Am I going to sentence him and consider his

5   cooperation and that's still going to be secret and nobody is

6   going to know.  And everything I do is going to be like what is

7   Judge Scola doing?  There are all these really bad things that

8   are in the public record.  What is secretly going on that

9   allows the judge to give this person a lesser sentence, or

10  what's secretly going on that allows the judge to let this guy

11  get out on bond when all the publicly-available things would

12  make anyone reasonably believe that the guy shouldn't get out

13  on bond or should get a higher sentence?

14          MR. JOSEPH SCHUSTER:  We are only addressing the bond

15  context at this point.  The government has raised the

16  diplomatic immunity issue, but we are only discussing the bond

17  right now.

18          Looking prospectively at a potential sentencing, in

19  other contexts, if the Court would seal and not out someone as

20  a cooperator, and the sentence may reflect their cooperation,

21  but again, it's not in a confirmed document, if there were to

22  be a substantial assistance motion, that would be sealed for a

23  period of time, it's something that is not unusual to happen.

24          And in this case, Your Honor, this is -- I don't need

25  to tell Your Honor that this is a unique case.  This is not an

```
 1   instance where another defendant is concerned about retaliation

 2   from a drug trafficking organization.  We are dealing with

 3   something vastly more powerful and vastly greater reach.  So

 4   it's a different set of concerns than the Court may have in

 5   other cases, in a drug trafficking context, in a gang context.

 6   There is a different reach here.

 7        The compelling interest in Mr. Saab's family, who are

 8   still in Venezuela, my understanding is they can't leave

 9   permanently without government approval.  The government is

10   very involved, as Your Honor likely knows from the background

11   of the case.

12        To say that there is no more danger because there has

13   been hints and insinuations in the press and a counsel has said

14   that things were done with the knowledge of the Maduro

15   government, that's not accurate.  There is still a danger.

16        And the compelling interest, we understand that the

17   public has an interest in open court proceedings, but balance

18   that against a risk of life.  And that's really what it is

19   here.

20        The government cites to another case in docket

21   entry 26 of a Venezuelan being murdered.  And because nothing

22   has happened thus far does not mean that it would not happen

23   prospectively.

24        For our purposes, we would just like to make the

25   application to Your Honor with a limited sealing.  We are not
```

1   saying to seal the entire bond motion.  The government is going

2   to have a very strong argument to counter us.  We understand

3   that.  We are just asking for this limited part that is going

4   to be a cornerstone of their argument, that he didn't surrender

5   and he was told to surrender after cooperating, we just want

6   that limited part sealed in the same way as sensitive medical

7   issues may be sealed.  And the compelling interest here is not

8   embarrassment.  It's life of a defendant and family.

9          So those are the grounds that we would ask for this to

10  seal for this purpose for our asking the Court if, under your

11  discretion, you would grant him a bond.

12          THE COURT:  All right.  Thank you.

13          MR. JOSEPH SCHUSTER:  Thank you.

14          THE COURT:  I am going to deny the defense request to

15  continue to seal these matters.  I am going to order that

16  docket entries No. 25 and 26 be unsealed immediately.  I am

17  also going to order that the discussion that we just had be

18  unsealed.

19          MR. NEIL SCHUSTER:  Your Honor?

20          THE COURT:  Yes.

21          MR. NEIL SCHUSTER:  Your Honor, objection.  I think

22  that if Your Honor unsealed docket entry 25 and 26 immediately,

23  there would be immediate repercussions against his family in

24  Venezuela.

25          THE COURT:  That's why I asked you four times, okay,

1    what have they done in the last year to try and get out.  Okay.

2    And the government indicated that they even attempted to help

3    the family without --

4        MR. NEIL SCHUSTER:  He has five children, some of

5    which are minor, and he has a wife there, and they are

6    basically under the thumb of the government.  I respectfully

7    ask Your Honor, if Your Honor denies our motion, we live with

8    it, we accept it.  Please do not unseal 25 and 26.  I do

9    believe that will create a situation where his family will be

10   either put in jail, harmed, physically harmed.  I would ask

11   Your Honor, and if Your Honor --

12       THE COURT:  Okay.  But you are saying that based upon

13   mere speculation.

14       MR. NEIL SCHUSTER:  No, Your Honor.  No, Your Honor.

15       THE COURT:  There's no -- you have affirmative

16   evidence that someone has threatened his family?  Anybody who

17   cooperates in any situation, there is always the potential for

18   physical harm to them.  If he was that concerned about it, he's

19   had since February 21 to do something about it.  He's had since

20   November when it leaked out temporarily to do something about

21   it.  He's had the invitation of the government to help him that

22   he's had to do it.  I'm not unconcerned about the safety of the

23   family, but I have to balance everything.  There's no specific

24   threat you have identified.

25       MR. NEIL SCHUSTER:  I appreciate that, Your Honor.  I

```
 1   can tell the Court that, based upon my knowledge of past
 2   situations, if the Venezuelan government finds out the extent
 3   of what this individual has provided, I have no doubt that
 4   there will be retaliation against his wife and his children.  I
 5   have no doubt.  I say that with knowledge of past experience in
 6   representing individuals in that country and the status of
 7   where somebody is now as a consequence of a similar situation.
 8          Your Honor, deny our motion.  We understand.  Given
 9   Your Honor's prospective ruling or your ruling, we are not
10   going to ask for bond.  But please, Your Honor, do not unseal
11   25 and 26.  If Your Honor did so, I do believe in good faith as
12   an officer of the court that there would be retaliation,
13   physical, judicial, very powerful retaliation.  Please, Your
14   Honor.  Please reconsider that.
15          THE COURT:  Okay.  I am not going to reconsider it.
16   Let's open the courtroom.
17          MR. NEIL SCHUSTER:  May Your Honor stay your ruling
18   pending a writ?
19          THE COURT:  No.
20          MR. NEIL SCHUSTER:  Please, Your Honor.
21          THE COURT:  No.
22          Okay.  Open the courtroom.
23          MR. NEIL SCHUSTER:  Your Honor, until trial, please,
24   until trial?  The government agrees.
25          THE COURT:  No.  I don't care if they agree.  I have
```

1    already heard from you.  Okay.  I gave you a full hearing.  I

2    made my ruling.  Let's go.

3           We are going back on the record.  So the people who

4    were not allowed to be present, I have just ruled that the

5    hearing that we just held, even though it was initially sealed,

6    I have unsealed that.  I am also unsealing docket entries

7    No. 25 and 26 effective immediately.

8           So this is set for a status conference this morning.

9    What matters do you all want to discuss this morning?

10           MR. LUNKENHEIMER:  Your Honor, Kurt Lunkenheimer on

11    behalf of the United States.

12           We wanted to come before the Court to try and give the

13    Court some information about when we would think a trial would

14    occur and potential briefing in this matter.

15           First, we would ask -- the Court last time asked us

16    for a realistic trial date.  And the honest answer is I don't

17    think we can give you one due to this diplomatic immunity issue

18    that, one, right now is on the Eleventh Circuit and, two, if it

19    came back down and Your Honor denied a motion to dismiss based

20    on it, it's potentially interlocutory appealable and could be

21    up at the Eleventh Circuit again for a much longer period of

22    time.

23           But we are asking jointly for a trial date in early

24    October, which would assist us in the issuance of, as I said,

25    the responses to MLATs that we have issued and other issues.

1          THE COURT:  Does the defense agree with that trial

2     date?

3          MR. NEIL SCHUSTER:  Yes, Your Honor.

4          THE COURT:  Okay.  So I have a calendar call October 4

5     for the two-week period October 11.  Do both sides agree with

6     that trial date at least for the time being with the

7     understanding that it may get delayed further for those

8     matters?

9          MR. LUNKENHEIMER:  Yes, Your Honor.

10         MR. NEIL SCHUSTER:  Yes, Your Honor.

11         THE COURT:  I am going to set the trial for the

12    two-week period commencing October 11 with the calendar call

13    October 4 at 9:00 a.m.  That's beyond what would ordinarily be

14    the statutory speedy trial period, but I find that the

15    interests of justice outweigh the defendant and the public's

16    right to a speedy trial.  So we will set that trial date.

17         What's the next issue?

18         MR. LUNKENHEIMER:  Your Honor, we wanted to come

19    before you and also ask that we have another status conference

20    at the end of April.  As I said, the diplomatic immunity

21    issue -- or, sorry, the motion to specially appear that you

22    denied based on the fugitive disentitlement doctrine is

23    currently before the Eleventh Circuit.  It's set for oral

24    argument the week of April 4.

25         We have also filed a motion to dismiss that appeal

1    since the defendant is currently here and we believe it's moot.

2    We have outlined a joint briefing schedule on the diplomatic

3    immunity issue if it came back to the Court, and so we would

4    hope that as soon as it does, if it does, get remanded to the

5    Court, that we have a status conference where we can put hard

6    deadlines to that briefing schedule.  We just don't know how

7    long it will take to --

8         THE COURT:  If there really is oral argument on

9    April 4, what are the chances they are going to have a ruling

10   before the end of April?

11        MR. LUNKENHEIMER:  No one in our criminal appellate

12   section could give me an idea about that.  I would note that --

13        THE COURT:  It's very rare that they would have an

14   opinion out in three weeks.

15        MR. LUNKENHEIMER:  The Eleventh Circuit did also just

16   hear argument on February 9 in a civil case which discussed

17   where they debated the fugitive disentitlement doctrine on

18   February 9.  There's potentially a ruling coming out on that

19   which may make a decision in our matter faster.

20        I understand, Your Honor.  I have asked everyone in

21   our appellate section, at least the bosses, for an estimate,

22   and they can't provide us one.  But we do have a briefing

23   schedule laid out, and we would just -- if when the case is

24   remanded, we would hope to be back in front of you quickly to

25   put solid dates to that.  One of those dates would be an

1    evidentiary hearing we would propose where we would be flying

2    in foreign witnesses, and to do that, we need a date certain.

3              THE COURT:  It seems to me like a better, more

4    realistic date would be June 10.  And if your motion to dismiss

5    the appeal is granted, which might be a much quicker ruling,

6    then you can ask me to expedite or move up the status.  It just

7    seems like there's a 99 percent chance that it's not -- it's

8    going to be a wasted time period.

9              So I am going to set a status at 8:30 on June 10, so

10   status re: appeal.  And, again, if the case is resolved before

11   that, contact my office and I will give you a status within a

12   couple of days.

13             MR. LUNKENHEIMER:  That's okay with the government,

14   Your Honor.  Thank you.

15             THE COURT:  Okay.  Anything else this morning from the

16   government?

17             MR. LUNKENHEIMER:  Nothing on behalf of the United

18   States, Your Honor.

19             THE COURT:  Anything else from the defense this

20   morning?

21             MR. NEIL SCHUSTER:  Reconsideration, Your Honor.

22             THE COURT:  All right.  Denied.

23             All right.  We will be in recess.  Thank you all.

24             (The hearing concluded at 8:57 a.m.)

25                           - - -

C E R T I F I C A T E


        I hereby certify that the foregoing is an

accurate transcription of the proceedings in the

above-entitled matter.



2/16/22                    s/ Tammy Nestor
                           Tammy Nestor, RMR, CRR
                           Official Court Reporter
                           400 North Miami Avenue
                           Miami, Florida 33128
                           tammy_nestor@flsd.uscourts