# Exhibit C

# BakerHostetler

**Baker&Hostetler** LLP

45 Rockefeller Plaza
New York, NY 10111

T 212.589.4200
F 212.589.4201
www.bakerlaw.com

June 23, 2022

Jonathan B. New
direct dial: 212.589.4650
jnew@bakerlaw.com

**CONFIDENTIAL TREATMENT REQUESTED UNDER FOIA**

**VIA EMAIL**

Kurt Lunkenheimer, Esq. (kurt.lunkenheimer@usdoj.gov)
United States Attorney's Office
Southern District of Florida
99 N.E. 4th Street
Miami, FL 33132

Alexander Kramer, Esq. (alexander.kramer@usdoj.gov)
U.S. Department of Justice
Fraud Section
1400 New York Ave., N.W.
Washington, DC 20005

> Re:  *Supplemental Discovery Request in* <u>U.S. v. Saab Moran, et al.</u>, *Case No. 19-cr-20450-RNS (S.D. Fla.)*

Dear Kurt and Alex:

We write on behalf of our client Alex Saab to supplement (and in some cases repeat and emphasize) Neil Schuster's earlier requests for disclosure and production of documents and information material to preparation of Mr. Saab's defense under Rule 16(a)(1)(E) and/or required to be disclosed under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny.[1] Specifically, we write to formally put you on notice, to the extent that you have not already been advised, that the documents[2] and information described and requested below are material to the preparation of Mr.

---

[1] We understand Mr. Schuster made discovery requests in a November 18, 2021 letter to you, in an informal discovery conference with you on May 23, 2022, and in a May 25, 2022 email to you.

[2] "Document" and/or "documents" are used in their broadest sense, and mean, without limitation, audio files, handwritten text, electronic text, or other computerized data. The terms "document" and/or "documents" specifically include voicemail messages, all written, printed, typed, electronic, and/or other graphic material in your possession custody or control, whether or not prepared by you, and include, but are not limited to correspondence, memoranda, handwritten notes, messages, electronic mail ("e-mail"), draft and deleted e-mail messages, text messages, agreements, books, calendars, certifications, charts, compilations, contracts, declarations, decrees, diaries, drafts, entries, files, financial statements, information, inscriptions, instructions, invoices, journals, ledgers, letters, lists, logs, mail, manuscripts, messages, minutes, notations, notes, notices, opinions, papers, petitions, pleadings, policies,

Kurt Lunkenheimer, Esq.
Alexander Kramer, Esq.
June 23, 2022
Page 2

Saab's defense and are thus required to be produced under *Brady* and its progeny, and will play a crucial role in assisting his defense team in obtaining evidence to negate the charges in the Indictment and uncover admissible evidence, aide his defense team in identifying witnesses, witness preparation, and assisting in impeachment and rebuttal. Therefore, we request that the Government immediately undertake a complete review of its documents and files—and those of its law enforcement partners, including but not limited to the Drug Enforcement Administration ("DEA"), the Federal Bureau of Investigation ("FBI"), Homeland Security Investigations ("HSI"), Immigration and Customs Enforcement ("ICE"), related Task Force Agents, the Department of State, the Department of Defense, the Department of Treasury, the U.S. Coast Guard, as well as assisting foreign agents/agencies in Cape Verde, Colombia, Venezuela and elsewhere and any other agency or government that was allied with, cooperated with or assisted your investigation or prosecution ("Investigation Partners")—and disclose and produce any additional *Brady* material or Rule 16 material immediately. We ask that the Government include in its review any notes of, or documents presented during any interviews, presentations or proffers made to the Government by any individual or entity concerning the investigation of this matter. We also request that the Government include in its review any information received by it or its Investigation Partners during their efforts to request a Red Notice, provisionally arrest, and extradite Mr. Saab to the United States.

Specifically, we request the immediate disclosure and production of:

1.   Information and/or documents that are relevant to (whether they tend to support or denigrate the claim) Mr. Saab's defense that he served as a Special Envoy to Iran or had diplomatic immunity, including but not limited to:

   i.   Any communications, notations, notes, diplomatic cable, report, memoranda, intelligence report, news report or publication, or any other document or record that references, reflects, discusses or addresses in any way the issue of whether Alex Saab was appointed a Special Envoy or diplomat, was recognized by any person, government or government agency or department as a Special Envoy or diplomat, was acting as a Special Envoy or diplomat, or was participating in a mission at any time on behalf of Venezuela as a Special Envoy or diplomat;

   ii.   Any communications, notations, notes, diplomatic cable, report, memoranda, intelligence report, news report or publication, or any other document or record that indicates or tends to establish that Alex Saab: had been appointed a Special Envoy by the Government of Venezuela to Iran;

---

presentations, publications, receipts, recitals, recommendations, records, registries, reports, requests, riders, schedules, statements, subpoenas, tables, transcripts, undertakings, work sheets, work papers, writings, magazine or newspaper articles, photographs, videos, microfiche, microfilm, information contained in any computer database, recording or tape wires, film, or any graphic matter, however produced or reproduced, all mechanical or electronic sound recordings or transcripts thereof, all information stored or located in computer hardware or software, including metadata, and all drafts and non-identical copies thereof.

Kurt Lunkenheimer, Esq.
Alexander Kramer, Esq.
June 23, 2022
Page 3

had made any trip to Iran on behalf of the Government of Venezuela; or had taken any other action on behalf of the Government of Venezuela as a Special Envoy or diplomat;

iii.     Any communications, notations, notes, diplomatic cable, report, memoranda, intelligence report, news report or publication or any other document or record that discussed, addressed, or referenced the purpose of any trip by Alex Saab from Venezuela to Iran or which was planned to be destined to Iran during the period of January 2020 to July 2020 (specifically including travel from March 8-15, 2020, April 14-21, 2020, and June 12-16, 2020);

iv.     Any communications, notations, notes, diplomatic cable, report, memoranda, intelligence report, news report or publication or any other document or record that discussed, referenced, mentioned, summarized or addressed the details of any trip by Alex Saab from Venezuela to Iran or bound for Iran during the period of January 2020 to July 2020 (specifically including travel from March 8-15, 2020, April 14-21, 2020, and June 12-16, 2020);

v.     Any document or communication that memorializes or references a statement by anyone that Alex Saab was a Special Envoy or diplomat, that Alex Saab claimed to be a Special Envoy or diplomat, that any government (including, but not limited to, Venezuela and Iran) referred to Alex Saab as a Special Envoy or diplomat, or discusses actions Alex Saab took as a Special Envoy or diplomat;

vi.     Any communications, notations, notes, diplomatic cable, report, memoranda, intelligence report, news report, or any other document or record that mentions, references, or discusses the plans for Alex Saab's travel from Venezuela to Iran in 2020 or the events that occurred during Alex's Saab's travel from Venezuela bound for Iran in 2020 (specifically including travel from March 8-15, 2020, April 14-21, 2020, and June 12-16, 2020);

vii.     Any communications, notations, notes, diplomatic cable, memoranda, report, intelligence report, news report, or any other document or record that mentions, references, or discusses the diversion of the airplane on which Alex Saab was traveling on or about June 12, 2020 to Cape Verde, and his subsequent arrest and detention;

viii.     Any communications, notations, notes, diplomatic cable, memoranda, report, intelligence report, news report, or any other document or record that mentions, references, or discusses the seizure and chain of custody of

Kurt Lunkenheimer, Esq.
Alexander Kramer, Esq.
June 23, 2022
Page 4

        any documents Alex Saab was transporting when detained/arrested including the Cape Verde or U.S. inventory *vel non* of such materials, and the roles of those participating in the seizure and inventory;

    ix.    Any communications, notations, notes, diplomatic cable, memoranda, report, intelligence report, news report, or any other document or record that mentions, references, or discusses Alex Saab's extradition proceedings in Cape Verde, including all documents the Department of Justice and/or Department of State provided to, or received from, Cape Verde, and specifically all items relevant to determination of his diplomatic status.

2.    Pursuant to *Brady* and its progeny, including *United States v. Agurs*, 427 U.S. 97 (1976) and *Giglio v. United States*, 405 U.S. 150 (1972), the following categories of information for any potential witness the Government may call at the evidentiary hearing currently scheduled for August 29, 2022, or for any person whose statements the Government intends to introduce at the evidentiary hearing pursuant to Federal Rule of Evidence 801(d)(2)(C), (D) or (E):

    i.    all documents or information relating to conviction, charges, arrest, or criminal record for such individual;

    ii.    to the extent the potential witness is a police officer or government employee, any complaints made or filed alleging misconduct and copies of the potential witness's personnel file;

    iii.    all documents or information relating to threats, promises, consideration, or inducements made to any such individuals, whether directly to the witness or indirectly to the witness's attorney, friends, family members, employer, or business associates. "Consideration" means anything of value or use, including immunity grants, whether formal or informal; witness fees; transportation assistance; money or other financial assistance; or assurances, promises, or suggestions of favorable treatment with respect to any criminal, civil, or administrative manner, including any cooperation agreements with any governmental or regulatory entity;

    iv.    each specific instance of conduct from which it can be inferred that any potential prosecution witness is or has been untruthful;

    v.    all documents or information (in whatever form) relating to inconsistencies in statements given by any potential prosecution witness;

    vi.    all documents or information (in whatever form) that would tend to impeach the credibility of any potential prosecution witness;

Kurt Lunkenheimer, Esq.
Alexander Kramer, Esq.
June 23, 2022
Page 5

      vii.    all documents or information (in whatever form) bearing adversely on the character or reputation for truthfulness of any potential Government witness;

      viii.    all statements or documents made or executed by any such individual that the Government suspects or knows to be false;

      ix.    all statements by any such individual that he or she is not aware of any wrongdoing by any Defendant or alleged co-conspirator;

      x.    all statements by any such individual relating to whether Alex Saab was a Special Envoy or diplomat or relating to the circumstances of his detention, arrest, and extradition;

      xi.    all statements by any such individual about what Alex Saab had in his possession when he travelled to Cape Verde in June 2020 or what he said or did not say when he was detained and/or arrested in Cape Verde in June 2020; and

      xii.    all documents or information reflecting any potential or actual bias against or hostility toward any Defendant.

In making these requests under Rule 16 and *Brady*, we think it is important to explain our views as to the Investigation Partners of which we believe you have an obligation to search the records. As you know, when complying with its *Brady* obligation, the "prosecutor's office is . . . the spokesman for the Government" pursuant to well-established agency principles. *Giglio*, 405 U.S. at 154 (citing Restatement (Second) of Agency § 272). The "duty to produce requested evidence falls on the state" *qua* state and all agents who are part of the prosecution team,[3] in whatever agency or department they work. *Martinez v. Wainwright*, 621 F.2d 184, 186 (5th Cir. 1980). There is "no suggestion in *Brady* that 'different arms' of the government are severable entities." *Id.*; *accord United States v. Deutsch*, 475 F.2d 55, 57 (5th Cir. 1973). This Circuit[4] "has declined to draw a distinction between different agencies under the same government" for purposes of *Brady* compliance. *United States v. Antone*, 603 F.2d 566, 569 (5th Cir. 1979).

The prosecution against Mr. Saab—involving investigation of his overseas activities, his interception while *in transitu* on a diplomatic mission to Iran, and his extradition from Cape

---

[3] The prosecution team "includes both investigative and prosecutorial personnel." *Antone*, 603 F.2d at 569. The Justice Manual recognizes that it includes "federal, state, and local law enforcement officers and other government officials participating in the investigation and prosecution of the criminal case against the defendant." U.S. Dep't of Just. Manual § 9-5.001.B.2.

[4] Decisions of the Fifth Circuit "as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for [the Eleventh Circuit itself], the district courts, and the bankruptcy courts of the circuit." *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981); *accord United States v. Moss*, 34 F.4th 1176, 1188 n.5 (11th Cir. 2022).

Kurt Lunkenheimer, Esq.
Alexander Kramer, Esq.
June 23, 2022
Page 6

Verde—has involved a number of federal departments and agencies that have "pooled their investigative energies" against him, *Antone*, 603 F.2d at 569, including the Departments of Justice,[5] State,[6] Defense,[7] and Treasury[8] and Homeland Security.[9] The Department of Justice thus has a "veritable storehouse of relevant facts and . . . this access must be shared 'in the interest of inherent fairness . . . to promote the fair administration of justice.'" *United States v. Auten*, 632 F.2d 478, 481 (5th Cir. 1980) (quoting *Calley v. Callaway*, 519 F.2d 184, 223-24 (5th Cir. 1975)). Accordingly, you "cannot compartmentalize the Department of Justice" for purposes of fulfilling your *Brady* obligation in this case. *Deutsch*, 475 F.2d at 57. In addition, Section 9-5-002 of the Justice Manual encourages prosecutors "to err on the side of inclusiveness when identifying the members of the prosecution team for discovery purposes."

Indeed, you have already affirmatively introduced evidence in the Court from the U.S. Department of State. ECF 24-3. You have characterized that declaration from the Department of State as stating that the Department of State is not aware of any basis for Mr. Saab to assert immunity and that it is not aware of his diplomatic status. ECF-24 at 17. To the extent that the Department of State possesses any of the information requested above, you have an obligation to produce it not only because it constitutes *Brady* material and is necessary for the "fair administration of justice," but also because of your duty of candor to the Court.

We would also like to address the discussion in our call on Thursday, June 16, 2022, about your views as to whether you have an obligation under *Brady*, or otherwise, to produce documents within your prosecution and investigative team's possession that may bear on Alex Saab's immunity defense that he was a Special Envoy for Venezuela on a mission to Iran. In our call, when we asked whether you would produce such documents if your prosecution or investigative

---

[5] In a case involving extradition, the Criminal Division's Office of International Affairs ("OIA") must be consulted, U.S. Dep't of Just. Manual § 9-15:100. OIA is a "force multiplier" that "works extensively with other agencies to build successful cases . . . . [Its] partners are state and local law enforcement, other DOJ components, and U.S. government agencies and foreign investigators and prosecutors." *See Our Partners*, Office of Int'l Affairs, U.S. Dep't of Justice, *available at* https://www.justice.gov/criminal-oia

[6] *See* U.S. Dep't of Just. Manual § 9-15:240, -300 (requests for extradition are made by diplomatic note prepared by Department of State). *See also* Mark T. Esper, A Sacred Oath: Memoirs of a Sec'y of Defense During Extraordinary Times, 327-332 (2022) (hereinafter *Esper*) (detailing State Department involvement).

[7] *Esper* at 327, 327-32 (detailing extensive Department of Defense involvement and awareness that when detained by Cape Verde, Mr. Saab was en route to Iran on "special mission to negotiate a deal with Iran for Venezuela to receive more fuel, food, and medical supplies"). Indeed, former Defense Secretary Esper's book recounts that shortly after he was fired by the President, the Department of Defense deployed the USS *San Jacinto* "to keep an eye—somehow—on Saab while supposedly deterring outside intervention." *Esper* at 331.

[8] *See* Press Release, U.S. Dep't of Treasury, Treasury Disrupts Corruption Network Stealing from Venezuela's Food Distribution Program, CLAP (July 25, 2019), *available at* https://home.treasury.gov/news/press-releases/sm741 (announcing sanctions on Mr. Saab for same activities forming basis of indictment issued on same day).

[9] You have already provided multiple documents, seized from Mr. Saab upon his arrest in Cape Verde, describing an "oil for gold" diplomatic exchange between Venezuela and Iran. As these documents show, the U.S. intelligence and law enforcement communities were well aware of the "oil for gold" diplomatic exchange, in which Mr. Saab served as Special Envoy. Indeed, the Department of Justice seized four tankers carrying Iranian oil to Venezuela in August 2020, an effort involving extensive cooperation by Homeland Security, the FBI and DOJ. *See* Press Release, U.S. Dep't of Just., Largest U.S. Seizure of Iranian Fuel from Four Tankers (Aug. 14, 2020), *available at* https://www.justice.gov/opa/pr/largest-us-seizure-iranian-fuel-four-tankers.

Kurt Lunkenheimer, Esq.
Alexander Kramer, Esq.
June 23, 2022
Page 7

team possessed them, you indicated that you were still evaluating whether you had a *Brady* obligation to produce such documents and had not come to a conclusion on that issue yet. You also stated that you were waiting for Mr. Saab's defense team to present precedent to you demonstrating that you havee a *Brady* obligation to produce the requested documents as Mr. Schuster indicated he would do. Although we appreciate your invitation for defense counsel to advise you on your *Brady* obligations, we believe it is well established that prosecutors have an independent Constitutional responsibility to promptly disclose all *Brady* materials without regard to whether a specific request is made by the defense or whether the defense has proven that a particular material constitutes *Brady*. Indeed, pursuant to Federal Rule of Criminal Procedure 5(f), Magistrate Judge O'Sullivan ordered the Government at the initial appearance in this case, to disclose all *Brady* evidence. *Brady* evidence is any evidence that "favor[s] the defense," *United States v. Jordan*, 316 F.3d 1215, 1253 (11th Cir. 2003), by "cast[ing] doubt" on the Government's case, either substantively or via impeachment. *See Brady,* 373 U.S. at 87 (due process obligation is to turnover "evidence favorable to an accused'); *United States v. Duval*, 496 F.3d 64, 74 (1st Cir. 2007). *See also Milke v. Ryan*, 711 F.3d 998, 1012 (9th Cir. 2013) ("Any evidence that would tend to call the government's case into doubt is favorable for *Brady* purposes."); *United States v. Safavian*, 233 F.R.D. 12, 16 (D.D.C. 2005) ("The meaning of the term 'favorable' under *Brady* is not difficult to discern. It . . . [is evidence] that relates to guilt or punishment and that tends to help the defense by either bolstering the defense case or impeaching prosecution witnesses."). Magistrate Judge O'Sullivan confirmed that "[t]he defendant is entitled to this information without a request." ECF 58. *Accord* Dep't of Just. Manual § 9.5.001.B (*Brady* evidence "must be disclosed regardless of whether the defendant makes a request").

Moreover, Section 9-5-001 of the Justice Manual specifically counsels federal prosecutors to err on the side of disclosing information to the defense that goes beyond that which is material to guilt as articulated in *Kyles v. Whitley*, 514 U.S. 419 (1995) and *Strickler v. Greene*, 527 U.S. 263, 280-281 (1999):

> Department policy recognizes that a fair trial will often include examination of relevant exculpatory or impeachment information that is significantly probative of the issues before the court but that may not, on its own, result in an acquittal or, as is often colloquially expressed, make the difference between guilt and innocence. As a result, this policy ***requires disclosure*** by prosecutors of information beyond that which is "material" to guilt as articulated in *Kyles v. Whitley*, 514 U.S. 419 (1995), and *Strickler v. Greene*, 527 U.S. 263, 280-81 (1999). (emphasis added).

The Justice Manual further specifies that "[a] prosecutor must disclose information . . . that establishes a recognized affirmative defense, regardless of whether the prosecutor believes such information will make the difference between conviction and acquittal of the defendant for a charged crime." U.S. Dep't of Just. Manual § 9.5.001.C.1.

Kurt Lunkenheimer, Esq.
Alexander Kramer, Esq.
June 23, 2022
Page 8

We find it significant that you have not yet determined, in the time since Mr. Schuster made his
initial discovery request for the disclosure of information "material to the preparation of the
Diplomatic Immunity defense," whether you have a *Brady* obligation to disclose the requested
information. Indeed, you could not say in our call that no such obligation existed. This speaks
volumes about what the disclosure obligation is, and alone demonstrates that under Department
policy, you should disclose the requested information. Moreover, in our view, the law is clear
that you are required to disclose the information we have requested.

Furthermore, under Rule 16(a)(1)(E), you must grant the defendant access, *inter alia*, to any
material within your "possession, custody, or control" that is "material to preparing the defense."
Fed. R. Evid. 16(a)(1)(E) (emphasis added).[10] To be "material" to a defense, the evidence "need
not rise to the level that would trigger the Government's obligation under *Brady* . . . ." *United
States v. Aref*, 533 F.3d 72, 80 (2d Cir. 2008); *United States v. Amawi*, 695 F.3d 457, 471 (6th
Cir. 2012). The requested information is tailored to information "material to preparing the
defense" of diplomatic immunity.

Moreover, under *Brady*, you are constitutionally obligated to turn over evidence that may be
"favorable to an accused" when such evidence is "material either to guilt or to punishment. . . ."
*Brady*, 373 U.S. at 87; *accord United States v. Starrett*, 55 F.3d 1525, 1555 (11th Cir. 1995);
S.D. Fla. L. R. 88.10(c) (requiring turnover of information "which may be favorable to the
defendant on the issues of guilt or punishment"). At the pretrial discovery stage, as here,
evidence is "material" when it is "favorable" to the accused in the sense that it "relates to guilt or
punishment" and "tends to help the defense by either bolstering the defense's case or impeaching
prosecution witnesses." *United States v. Sudikoff*, 36 F. Supp.2d 1196, 1199 (C.D. Cal. 1999);
*accord United States v. Safavian*, 233 F.R.D. 12 (D.D.C. 2005); *United States v. Satary*, No. Cr.
19-197, 2020 WL 5850163, at *4 (E.D. La. Oct. 1, 2020); *United States v. Acosta*, 357 F. Supp.
2d 1228, 1233 (D. Nev. 2005). The evidence requested helps the defendant's case and is
"material to . . . punishment" of Mr. Saab. *Brady*, 373 U.S. at 87. An individual entitled to
diplomatic immunity cannot, by definition, be punished by the prosecuting sovereign, as he is
"immune" from its authority. *See* 22 U.S.C. § 254d ("Any action or proceeding brought against
an individual who is entitled to [diplomatic] immunity . . . shall be dismissed."); *Abdulaziz v.*

---

[10] In addition, under Local Rule 11.1(c) of the U.S. District Court for the Southern District of Florida, you are bound
by the Florida Rules of Professional Conduct, including Rule 4-3.8, which states that a "prosecutor in a criminal
case shall . . . make a timely disclosure to the defense of all evidence or information known to the prosecutor that
tends to negate the guilt of the accused or mitigates the offense . . . ." Fla. R. Pro. Conduct 4-3.8(c). Evidence of
diplomatic immunity will "mitigate[] the offense[s]" with which Mr. Saab has been charged by "mak[ing] less
severe" the punishment that may be imposed upon him. *Mitigate*, Black's Law Dictionary (11th ed. 2019) ("To
make less severe or intense"); *see also Peek v. Kemp*, 784 F.2d 1479, 1491 (11th Cir. 1986) ("mitigating evidence"
means that "such evidence is presented in favor of the defendant's position, i.e., mercy."). Mitigation evidence refers
to evidence that "would be used to lessen the portrayed severity of a crime, not to adjudicate an individual's
culpability." *Westray v. Brookhart*, --- F.4th ---, 2022 WL 2092854, at *8 (7th Cir. June 10, 2022). Diplomatic
immunity prevents adjudication of the defendant's culpability altogether and thus lessens the severity of punishment
that may be imposed by preventing prosecution from proceeding. That diplomatic immunity's mitigating effect is
complete rather than partial—or that such mitigation has been decreed by federal law rather than a jury—does not
alter this conclusion. Evidence of diplomatic immunity is thus "mitigate[ing]" evidence within the meaning of Fla.
R. Pro. Conduct 4-3.8(c).

Kurt Lunkenheimer, Esq.
Alexander Kramer, Esq.
June 23, 2022
Page 9


*Metro. Dade Cnty.*, 741 F.2d 1328, 1331 (11th Cir. 1984). Because an individual entitled to immunity *cannot be punished*, it necessarily follows that evidence relating to diplomatic immunity is "material to . . . punishment[.]" *Brady*, 373 U.S. at 87.

Finally, we want to address the issue of timing of the information we have requested. As we emphasized in our conference call, it is critical that we have the requested information in time for us to utilize it in our pre-evidentiary hearing opening brief to the Court. Indeed, as the Justice Manual recognizes, due process requires that disclosure be "made in sufficient time to permit the defendant to make effective use of that information . . . ." U.S. Dep't of Just. Manual § 9.5.001.D. Where, as here, the information is sought with relation to a pre-trial motion, timeliness necessitates disclosure prior to that motion. Mr. Saab's defense will be significantly prejudiced if the requested information is not provided in enough time before the filing of our opening brief to allow us to effectively utilize it—including by allowing us to do our own investigation. Accordingly, we request that you provide the requested information by June 30, 2022.

Thank you for your consideration of our requests which are necessary to ensure that Mr. Saab can challenge the prosecution that the Department of Justice has initiated against him. If you have any questions regarding these requests, please do not hesitate to call us. We are available at your convenience to meet and confer with you on our requests.

Best,

Jonathan B. New
Jonathan R. Barr
David B. Rivkin, Jr.