IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ALEX NAIN SAAB MORAN, *et al.*,<br><br>Defendants. | Case No. 19-20450-CR-Scola |

**REPLY IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO**
**PERMIT TESTIMONY BY VIDEOCONFERENCE**

Defendant Alex Nain Saab Moran ("Defendant" or "Mr. Saab") respectfully submits this reply in further support of his Motion to Permit Testimony by Videoconference, ECF No. 127. Defendant's motion seeks permission to present the testimony of witnesses located in Venezuela, identifying "VZ Witness 1" and "VZ Witness 2," who have personal knowledge regarding Mr. Saab's status as a Venezuelan special envoy to Iran. The motion also requests permission to present the videoconference testimony of additional Venezuelan witnesses, including to counter contentions made in the government's opposition brief, due November 7, 2022. Order, ECF No. 137.

**ARGUMENT**

**I.      Safeguards to Ensure the Integrity of the Testimony Can Be Devised**

Despite its repeated earlier position that foreign witnesses' testimony should be obtained via pretrial deposition under Fed. R. of Crim. P. 15, *see* Transcript of Status Conf., ECF No. 122 at 22:3-5, the government has now abandoned that position by failing to respond to Defendant's argument that Rule 15 is inapposite here and consequently, live videoconference testimony is "the only appropriate, meaningfully effective method of presenting the testimony of VZ Witness 1 and VZ Witness 2 and any additional witnesses. . . ." Def.'s Br., ECF No. 127 at 8-10. *See, e.g., Jones*

*v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) (failure to respond to any portion of a motion or claim therein renders such portion or claim unopposed, constituting abandonment of opposition); *accord Centennial Bank v. M/Y Karacol*, 2022 WL 393365, at *2 (S.D. Fla. Feb. 9, 2022). The net result is that the government now opposes any effort to procure the testimony of VZ Witness 1 or VZ Witness 2, other than by (presumably) in-person testimony.

The government does not contest that the testimony of VZ Witnesses 1 and 2 is material to Mr. Saab's affirmative defense of *in transitu* diplomatic immunity, or that such evidence must be permitted under both the Due Process Clause of the Fifth Amendment and the Compulsory Process Clause of the Sixth Amendment. *United States v. Hurn*, 368 F.3d 1359, 1362 (11th Cir. 2004); *United States v. Machado*, 886 F.3d 1070, 1085 (11th Cir. 2018); *United States v. Ramos*, 922 F.2d 968, 9674 (11th Cir. 1991). Yet, as elaborated *infra* Section II, the government proffers no reasonable means for obtaining these witnesses' in-person testimony, and it fails to refute the existence of two crucial obstacles: (1) Venezuelans cannot even obtain an interview for a U.S. visa (much less the visa itself) until late 2024, far too late for the pretrial hearing on diplomatic immunity; and (2) both VZ Witness 1 and VZ Witness 2 (and likely other Venezuelans) are ineligible to enter the U.S. because neither has received a CDC-approved COVID vaccine. Accordingly, respect for Defendant's constitutional rights requires granting the present motion.

Indeed, the government's *only objection* to the present motion is that Defendant "has not proposed any safeguards to ensure the integrity of the testimony it proposes to take abroad." Opp'n Br., ECF No. 133 at 3. It asserts that Defendant "does not propose the location of the testimony, who would be present at that location during the testimony to ensure that there is no undue influence or coaching of the witnesses, or how the Court could be assured that the witnesses are providing their testimony voluntarily and of their own free will." *Id*. It also objects that Defendant

has not provided "evidence that the swearing in of the witnesses and subjecting them to potential perjury criminal charges will have any meaningful effect. . . ." *Id.*

These concerns can be addressed with reasonable measures. Defendant thus proposes the following safeguards to ensure the integrity of the proceedings. First, the testimony will take place in Caracas, Venezuela, at a room in the Hotel Cayena which is a secure location with reliable Internet connection.[1] Second, the testimony will take place via Zoom, a familiar and secure videoconferencing platform that has been used for numerous court hearings and conferences during the COVID-19 pandemic. Third, witnesses will be sworn in, under penalty of perjury, by the U.S. court staff, just as he/she would for in-person testimony. Fourth, the only individuals who will be present during each witness' testimony will be the witness him/herself and one additional neutral individual, who will assist with the cameras and any other technology issues that may arise. Fifth, two cameras (Zoom accounts) will be used in the room where the testimony takes place: one camera will focus on the witness and the other will provide a view of the room, to ensure that no other individuals are present who could influence the witnesses' testimony. Each party and the judge will have laptops/computers by which they will appear, logging into their own Zoom accounts. Sixth, the identity of the witnesses can be verified by requiring the witnesses to show an official Venezuelan identification (e.g., passport) over the camera. Seventh, as this Court discussed with Silvia Zetterstrand of the court interpreter's office during the July 15, 2022 status conference, an interpreter "would connect remotely on Zoom" which is feasible based on the Court's prior experience of having "had hearings before where the defendant is in the courtroom who needs interpreter services, and the witness abroad who has testified by Zoom, using an interpreter, and it

---

[1] Or, alternatively, counsel is currently exploring the possibility of using space at a third country's embassy in Caracas with which both Venezuela and the United States have established diplomatic relations.

has worked." Transcript of Status Conf., ECF No. 122 at 21:4-18. Eighth, the court reporter will be present in Miami as usual. Ninth, if exhibits are used, they will be shown to the witness via screen-sharing on Zoom and hardcopies will also be present in the courtroom for examination by the judge and the parties.

The government cites numerous cases in its argument about insufficient safeguards but, tellingly, only two cases *disallow* an accused's request to obtain videoconference testimony of witnesses: (1) *United States v. Banki*, 2010 WL 1063453 (S.D.N.Y. Mar. 23, 2010); and (2) *United States v. Buck*, 271 F. Supp. 3d 619 (S.D.N.Y. 2017). Both cases are readily distinguishable.

*Banki* was decided in 2010—over twelve years ago, when the use of videoconference technology was far less accepted and ubiquitous. Since the COVID-19 pandemic, courts have become much more familiar and comfortable with videoconference testimony. More fundamentally, the defendant in *Banki* (unlike here) made no argument regarding (and the court never addressed) the accused's Fifth and Sixth Amendment rights to present favorable, material witnesses. *See generally Banki*, No. 10-cr-08, Mem. in Support of Def.'s Mot. to Present Testimony, ECF No. 24. The *Banki* court's primary concern was that because the witnesses were in Iran, they could not be extradited to face perjury charges if they lied, and "without the teeth of the penalty of perjury, the oath becomes nothing more than an empty recital." *Banki*, 2010 WL 1063453, at *4. The government contends that the same rationale applies here. ECF No. 133 at 4.

The second case, *United States v. Buck*, concluded that the defendant had not shown evidence of the Swiss witnesses' unavailability or the materiality of their testimony, which was cumulative of other evidence. *Buck*, 271 F. Supp. 3d at 623. Here, by contrast, the government has not contested either unavailability or materiality, and it cites *Buck* only for dicta expressing concerns about Switzerland's lack of extradition—dicta which was based upon *Banki*. *Id*. at 624.

The *Banki* court's rationale (and *Buck* court's dicta) is unpersuasive. The lack of an extradition treaty neither eliminates the possibility of perjury prosecution nor renders a U.S. court-administered oath "an empty recital." First, Mr. Saab proposes using the *same oath* administered to all U.S. court witnesses—which invokes the sanction of perjury under U.S. law—not the oath of another country. In *United States v. Khan*, No. cr-11-20331, for example, this Court allowed administration of a Pakistani oath, concluding that it provided reliability—even though it lacked U.S. perjury sanction—because the "premise—that an oath is meaningless without a perjury sanction—is false." *Khan*, Order, ECF No. 562 at 5 (Nov. 2, 2012). It reasoned, "[a]lthough perjury sanctions do encourage being truthful, oaths encourage being truthful in other ways and thus do not become meaningless absent a perjury sanction." *Id*. *Accord United States v. Abu Ali*, 528 F.3d 210, 241 (4th Cir. 2008) (court cannot conclude that Saudi oath "failed to serve its intended purpose of encouraging truth through solemnity."). Second, Venezuela's extradition policy does not prevent U.S. perjury prosecution. If a Venezuelan witness testifying via videoconference commits perjury and subsequently travels to (or through) a country allowing extradition, he/she can be detained via INTERPOL notice and extradited to the U.S.[2] Thus, the proposed administration of a U.S. oath, backed by the potential of perjury prosecution, provides ample indicia of solemnity and reliability to ensure the integrity of the proceedings.

More fundamentally, both *Banki* and *Buck* addressed the propriety of videoconference testimony during a *trial*. The present motion, by contrast, seeks to use videoconference testimony at a *pretrial* evidentiary hearing on diplomatic immunity, at which no jury will be present. The Court is the trier of fact for this pretrial hearing and based on the facts adduced, it will reach a legal

---

[2] Indeed, Mr. Saab is a Venezuelan national who was detained in Cape Verde and subsequently extradited to the U.S. That "Venezuela does not permit the extradition of its own nationals," Opp'n Br., ECF No. 133, at 4, did not prevent Mr. Saab's extradition.

conclusion regarding Mr. Saab's entitlement to *in transitu* diplomatic immunity. "When the Court is the trier of fact, concerns about permitting evidence of questionable reliability—which is what drove the outcomes in *Banki* and *Buck*—are far less pressing." *United States v. Donzinger*, 2020 WL 6364652, at *2 (S.D.N.Y. Oct. 28, 2020). Indeed, when the Court is the trier of fact, as with a bench trial, "courts have concluded that the proper course is to err on the side of admitting the evidence" because "the Court can take in the evidence freely and separate helpful conclusions from ones that are not grounded in reliable methodology." *Id*.

Given the undisputed materiality of the testimony proffered by these witnesses, the corresponding concern for protecting the Fifth and Sixth Amendment rights of the accused, the numerous safeguards proposed by Defendant, and the fact that the testimony will occur during a pretrial hearing (not trial itself), the Court should grant the present motion.

## II.   The Government Adduces No Evidence Disputing the Witnesses' Unavailability

VZ Witness 1 and VZ Witness 2 are unavailable for in-person testimony due to factors beyond Defendant's control. Foreign nationals located in Venezuela are obviously beyond this Court's subpoena power.[3] *See United States v. Drogoul*, 1 F.3d 1546, 1553 (11th Cir. 1993); *Mamani v. Berzain*, 2018 WL 888849, at *1 (S.D. Fla. Feb. 14, 2018). Beyond this, the witnesses are unavailable based on two independent, undisputed facts: (1) the current wait time for a visa *interview* with the U.S. embassy in Bogota, Colombia[4] is over two years and four months and despite several months of discussions, there is no evidence that the United States is either willing or able to expedite U.S. visas; and (2) the witnesses are ineligible for U.S. entry because neither

---

[3] It is also worth noting that the United States has not offered safe passage to any of Defendant's Venezuelan witnesses.

[4] Venezuelans seeking to enter the U.S. are required to apply at the U.S. embassy in Bogota, Colombia because the U.S. has suspended operation of the U.S. embassy in Caracas, Venezuela. *See* U.S. Embassy in Venezuela, U.S. Visa Services, *available at* https://ve.usembassy.gov/visas/.

has received a COVID-19 vaccine that is approved for entry by the U.S. Centers for Disease Control ("CDC").

### A. There is No Evidence that U.S. Visas Can be Obtained Prior to the Pretrial Hearing

The government's opposition falsely asserts that Defendant "has made minimal efforts to have the witnesses come to the United States. . . ." Opp'n Br., ECF No. 133 at 1. But as elaborated below, VZ Witness 1 applied for a U.S. visa but was given an appointment and interview date in late 2024 (too late for the pretrial hearing)[5] and Defendant made a good faith effort over several months to obtain the government's assistance with expediting visas, to no avail. The parties conferred on the issue of expediting visas multiple times, and Defendant has complied with each of the government's requests. Yet the government has repeatedly moved the goalposts, delayed resolution, and provided no indication that it is even able to facilitate visa expedition by the State Department.[6]

Specifically, during a telephonic meeting held June 16, 2022, Defendant informed the government that it had identified four potential Venezuelan witnesses[7] on diplomatic immunity and queried the government regarding assistance with expediting U.S. visas to enable in-person

---

[5] Given this reality, VZ Witness 2 has not applied for a U.S. visa. Doing so obviously would be futile, as the U.S. embassy Bogota in the normal course grants appointments and interviews sequentially, in the order received.

[6] The State Department, not the Department of Justice, is responsible for issuance of U.S. visas. *See* U.S. Dep't of State, Bureau of Consular Affairs, U.S. Visas, *available at* https://travel.state.gov/content/travel/en/us-visas.html/.

[7] Four days later, on June 20, 2022, defense counsel emailed the government the names and titles of the five potential Venezuelan witnesses. The government's opposition falsely asserts that "[n]one of those five potential witnesses [identified in the June 20 email] is VZ Witness 1 or 2." Opp'n Br., ECF No. 133 at 2. VZ Witness 2 was the third individual listed in the June 20 email, which identified him/her both by name and job title. Moreover, on September 1, 2022—the day the present motion was filed—Defendant informed the government by email of the identities and job titles of *both* VZ Witnesses 1 and 2. The motion informed the Court and government of the anticipated substance and materiality of both witnesses' testimony. *See* Def.'s Br., ECF No. 127 at 4.

7

testimony. *See* Declaration of Kendall Wangsgard ("Wangsgard Decl.") filed herewith, ¶ 4. The government stated that potential witnesses should apply for U.S. visas and it would then explore whether applications could be expedited. *Id.* ¶ 5.

At a subsequent telephonic conference July 12, 2022, defense counsel informed the government that the U.S. Embassy in Bogota had informed VZ Witness 1 that appointments for visa interviews were backlogged and unavailable until October 2024,[8] far too late for this Court's pretrial hearing. *Id.* ¶ 7. The government responded that any potential witness must nonetheless file a visa application before it could explore whether expedition would be possible. *Id.* Ten days later, on July 22, 2022, defense counsel emailed government counsel, providing a copy of VZ Witness 1's passport and confirmation of submission of his/her visa application and interview appointment, scheduled for late 2024[9] at the U.S. embassy in Bogota. *Id.* ¶ 8.

Approximately two weeks later, during another telephonic conference held on August 9, government counsel advised that it had no further update and did not know whether State Department expedition would be possible, but it would check and update defense counsel. *Id.* ¶ 9.

One week later on August 16, 2022, during another telephonic meeting, defense counsel again inquired if the government had any update regarding expediting VZ Witness 1's visa application. The government responded again that it would check. *Id.* ¶ 10. The following day (August 17), government counsel emailed defense counsel, requesting (for the first time) a copy of VZ Witness 1's "receipt from the visa application interview document that includes the bar code

---

[8] The lengthy time required to obtain a visa is confirmed by the U.S. State Department's website, which indicates that the current wait time for an individual seeking a non-immigrant visitor visa from the U.S. embassy in Bogota is 857 calendar days—approximately 2 years and 4 months. *See* U.S. Dep't of State, Bureau of Consular Affairs, U.S. Visas, *available at* https://travel.state.gov/content/travel/en/us-visas.html/ (last visited Sept. 17. 2022).

[9] VZ Witness 1's initial in-person appointment date with the Applicant Service Center at the U.S. embassy in Bogota is scheduled for October 25, 2024 and the required in-person interview date is scheduled for November 1, 2024.

on it[.]" *Id.* On August 30, 2022, defense counsel emailed government counsel the requested bar code. *Id.*

It is now three weeks since the bar code was provided—and over three months since defense counsel first requested the government's assistance with expedition—and Defendant still has heard nothing. It is therefore reasonable to conclude, under these facts, that there is no realistic possibility that U.S. visas will be issued prior to the pretrial hearing on diplomatic immunity.[10]

### B. The Witnesses Are Ineligible for U.S. Entry Because They Have Not Received CDC-Approved COVID-19 Vaccines

In addition to the inability to obtain a U.S. visa in time for the pretrial hearing, VZ Witness 1 and VZ Witness 2 are unavailable for in-person testimony because neither has received a CDC-approved COVID-19 vaccination, rendering them ineligible for U.S. entry under a Presidential proclamation and implementing CDC guidelines. Def.'s Br., ECF No. 127 at 6-7. Both individuals have received the Russian vaccine, Sputnik, which is not on the CDC's approved vaccines list. The government does not contest these witnesses' vaccine-related unavailability. Instead, it objects only that "[t]he United States has never been provided any documentation verifying the COVID-19 vaccination status of any potential witness for the evidentiary hearing." Opp'n Br., ECF No. 133, at 2. Yet as the government surely knows, it has no right to pretrial production of the private medical records of third-party witness. In both civil and criminal cases, "[p]arties alone are subject to discovery. Third-party witnesses need not submit to discovery." *In re Union Carbide Corp. Gas Plant Disaster*, 634 F. Supp. 842, 850 (S.D.N.Y. 1986). *See also In re U.S.*, 878 F.2d 153, 156

---

[10] At the time the present motion was filed, the pretrial hearing on diplomatic immunity was scheduled to begin October 31, 2022. The Court subsequently modified the schedule, and the hearing will now begin December 12, 2022. *See* Order, ECF No. 137. Given the lack of any progress during the last three months, there is no evidence reasonably suggesting that U.S. visas for Venezuelan witnesses can be expedited and issued by the State Department prior to December 12.

(5th Cir. 1989). More fundamentally, "[i]t is indeed clear beyond peradventure that 'the Constitution embodies a promise that a certain private sphere of individual liberty will be kept largely beyond the government'" and "medical records are clearly within this constitutionally protected sphere." *In re Search Warrant (Sealed)*, 810 F.2d 67, 71 (3d Cir. 1987) (quoting *Thornburgh v. Am. College of Obstetricians*, 47 U.S. 747 (1986)); *accord Shoemaker v. Handel*, 608 F.Supp. 1151, 1159 (D.N.J. 1985); *United States v. Bowers*, __ F. Supp. 3d __, 2022 WL 195819, at *15 (W.D. Pa. 2022).

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the motion be granted, allowing live videoconference testimony for any Defense witness located in Venezuela, including VZ Witness 1 and VZ Witness 2. For any additional Defense witnesses located in Venezuela, including rebuttal necessitated by the government's diplomatic immunity opposition brief (due November 7, 2022), Defendant will provide the Court and government with the names and anticipated general substance of such witnesses' testimony at the same time Defendant's reply brief is due (November 14, 2022). *See* Order, ECF No. 137.

Dated: September 19, 2022

                                                      Respectfully submitted,

                                                      BAKER & HOSTETLER LLP

                                                      /s/ *Lindy K. Keown*
                                                      Lindy K. Keown (FL: 117888)
                                                      200 South Orange Avenue
                                                      Suite 2300
                                                      Orlando, Florida 32801
                                                      Tel: (407) 649-4000
                                                      lkeown@bakerlaw.com

                                                      /s/ *David B. Rivkin, Jr.*
                                                      David B. Rivkin, Jr. (*pro hac vice*)
                                                      Elizabeth Price Foley (FL: 92380)

10

Jonathan R. Barr (*pro hac vice*)
1050 Connecticut Avenue, N.W.
Suite 1100
Washington, DC 20036
Tel: (202) 861-1500
drivkin@bakerlaw.com
efoley@bakerlaw.com
jbarr@bakerlaw.com

Jonathan B. New (*pro hac vice*)
45 Rockefeller Plaza
11th Floor
New York, New York 10111
Tel: (212) 589-4200
jnew@bakerlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 19, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Lindy K. Keown
Lindy K. Keown
