```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
 2                          MIAMI DIVISION
                       CASE NO: 1:19-CR-20450
 3

 4     UNITED STATES OF AMERICA,           Miami, Florida

 5          Plaintiff,                     September 21, 2022

 6              vs.                        9:00 a.m. - 9:26 a.m.

 7     ALEX NAIN SAAB MORAN,

 8          Defendant.                     Pages 1 to 25
       _____

 9

10          DEFENDANT'S MOTION TO PERMIT WITNESS TESTIMONY
                        BY VIDEO CONFERENCE
11                    BEFORE THE HONORABLE
            UNITED STATES DISTRICT JUDGE ROBERT N. SCOLA
12

13
       APPEARANCES:
14
       FOR THE PLAINTIFF:      KURT K. LUNKENHEIMER, ESQ.
15                             US Attorney's Office
                               99 NE 4th Street
16                             Miami, FL  33132
                               Kurt.lunkenheimer@usdoj.gov
17
                               ALEXANDER J. KRAMER, ESQ.
18                             U.S. Department of Justice
                               Criminal Division
19                             Bond Building
                               1400 New York Avenue, N.W.
20                             8th Floor
                               Washington, DC  20005
21                             Alexander.kramer@usdoj.gov

22

23     FOR THE DEFENDANT:      ELIZABETH PRICE FOLEY, ESQ.
                               Baker & Hostetler, LLP
24                             45 Rockefeller Plaza
                               New York, NY  10111
25                             Efoley@bakerlaw.com
```

```
 1
     APPEARANCES (Cont'd):
 2

 3   FOR THE DEFENDANT:

 4                              DAVID B. RIVKIN, JR., ESQ.
                               Baker & Hostetler, LLP
 5                             45 Rockefeller Plaza
                               New York, NY  10111
 6                             Drivkin@bakerlaw.com

 7
                               JOSEPH MICHAEL SCHUSTER, ESQ.
 8                             Joseph M. Schuster, Esq., P.A.
                               5750 Collins Avenue
 9                             Suite 12G
                               Miami Beach, FL  33140
10                             Joe@josephmschuster.com

11
                               NEIL M. SCHUSTER, ESQ.
12                             555 NE 15th Street
                               Suite 2-C
13                             Miami, FL  33132
                               Neil@neilmschuster.com

14

15   STENOGRAPHICALLY REPORTED BY:

16
                               SHARON VELAZCO, RPR, FPR
17                             Official Court Reporter
                               United States District Court
18                             400 North Miami Avenue
                               Miami, Florida 33128
19

20

21

22

23

24

25
```

1              (The following proceedings were had:)

2              THE COURT:  Good morning, everyone.  Welcome.

3              Please be seated.

4              All right.  Our first matter this morning is United

5    States of America versus Alex Nain Saab Moran.

6              Who is here for the Government?

7              MR. LUNKENHEIMER:  Good morning, your Honor.  Assistant

8    United States Attorney Kurt Lunkenheimer here with DOJ trial

9    attorney Alex Kramer, DEA special agent William Callow, and DEA

10   task force officer Francisco Rincon.

11             THE COURT:  All right.  Good morning.

12             And, for the defense?

13             MS. FOLEY:  Good morning, your Honor.  Elizabeth Foley

14   for the defendant.

15             With me this morning is my colleague, David Rivkin,

16   defendant, Alex Saab, and my other colleagues, Neal Schuster

17   and Joe Schuster.

18             THE COURT:  All right.  Good morning.

19             And, if you all want to take off your mask, you may.

20             You don't have to, but you may.

21             All right.  So, this is here for argument on the

22   Defendant's Motion to Permit Witness Testimony By Video

23   Conference.

24             Let me hear from the defense first, since it is your

25   motion.

1          MS. FOLEY:  This motion is seeking to allow the

2     testimony by zoom of witnesses who are located in Venezuela.

3     These witnesses are anticipated to provide material, favorable

4     defense on evidence on the defendant's defense of diplomatic

5     immunity.

6          Two of the witnesses have already been identified to

7     the Government.  They have been anonymized using the monikers

8     Witness One and Witness Two.

9          And, the motion is also recognizing, of course that,

10     depending on the government's opposition to the diplomatic

11     immunity -- that brief is coming on the November 7th -- the

12     defendant may need to call additional witnesses located in

13     Venezuela.

14          So, the motion also recognizes that the defendant would

15     need -- need to identify those additional witnesses by name,

16     provide a summary of the anticipated substance of any

17     additional witnesses.  And, we are proposing that we would do

18     that by the day that our reply brief on diplomatic immunity is

19     due, which is November 14th.

20          And, turning to the substance of the motion, your

21     Honor, as you know, video conference testimony has been allowed

22     for many years, and as far back as 1990, when the Supreme Court

23     decided a case called Maryland versus Craig.  That case

24     involved a child abuse witness who was offering testimony

25     against the accused.  And, they allowed that testimony to be

1    taken by closed circuit television.

2         Of course, that was 1990, and that was sort of

3    equivalent back then of zoom, although it was much clunkier.

4         And, of course, in this case, in the Craig case, the

5    Court allowed that testimony even though it was offered against

6    the accused because of the fact that there were what the court

7    called other elements, other than face-to-face confrontation

8    with the defendant that ensured the integrity of the

9    proceedings and the reliability of that testimony.

10        Those elements that the court identified that were --

11   really, three of them -- one, there was the witness is placed

12   under oath; second, the witness is subject to

13   cross-examination; and, third, the witness' demeanor could be

14   fully observed through the closed circuit television.

15        And, the Craig court said that the presence of these

16   three elements "Adequately ensures that the testimony is both

17   reliable and subject to rigorous adversarial testing in a

18   manner that is functionally equivalent to that accorded to

19   in-person testimony."

20        And, of course, all three of these elements, the oath,

21   the cross-examination, the demeanor evidence, are going to be

22   present if this Zoom motion is granted by your Honor.

23        But, of course, here, unlike in Craig, we don't have

24   any confrontation clause issues because, of course, it's the

25   defendant that's proposing this testimony.

1           And, in fact, in this case, the concern is really the

2    exact opposite of what it was in Craig.  The concern here is

3    that this defendant will not be allowed to offer favorable

4    material evidence on his affirmative defense of diplomatic

5    immunity.  And, if that is the case, it would violate his

6    rights under oath, the due process clause of the Fifth

7    Amendment, and the compulsory process clause of the Sixth

8    Amendment.

9           It is also worth noting, your Honor, that the

10   Government, in its opposition here, does not even contest the

11   materiality of the Witness One and Witness Two.

12          It also is worth noting that they don't really even

13   contest that these witnesses are unavailable.

14          On the unavailability side of the ledger, there are

15   really two reasons we set forth why they are unavailable; one,

16   is the visa issue, and one is the vaccination issue.

17          On the visa issue, we can't even get an initial

18   appointment -- these witnesses can't get an initial appointment

19   and interview to get their US visa started with the

20   U.S. Embassy in Bogota until October or November of 2024, which

21   is two years after this hearing on diplomatic immunity is

22   scheduled to take place.

23          And, again, the Government doesn't even contest that

24   reality.

25          The Government says only that the defendant has made

 1    what it calls minimal efforts to obtain these visas.  But, it

 2    doesn't say what else the defendant was supposed to do, in an

 3    attempt to get these visas, other than apply for the visa and

 4    find out that it is not even feasible to have the visa issued

 5    in time for this hearing.

 6          We have, in fact, explored the possibility of

 7    expediting these visas.  And, of course, it is not the

 8    Department of Justice that is responsible for issuing the

 9    visas.  It would be the Department of State.  But, we have had

10    those conversations with the government for about three months

11    now.  The entire summer, we have had multiple conferences about

12    it.

13          And, there has been essentially no movement after all

14    those months.  So, frankly, at this point, given these facts,

15    it should be up to the Government to show that expedition is

16    possible.  We don't even know, for example, after many months,

17    whether the State Department could expedite these visas.

18          On the vaccination issues, these witnesses, as you

19    know, have not received vaccines that are approved by the CDC

20    pursuant to its current COVID-19 guidelines, which were issued

21    pursuant to a presidential proclamation.  And, the government

22    doesn't contest that either, that they have not received the

23    appropriate vaccines.  All the Government says is that it has

24    never been provided documentation of vaccination.  But, of

25    course, the Government doesn't have the right to discover any

1    information against third-party witnesses, much less their

2    private medical records, which would raise serious

3    constitutional privacy concerns of its own.

4              So, on unavailability and materiality, there really

5    isn't much of a dispute here.

6              And, I think it is also worth emphasizing to your Honor

7    that unlike in the two primary cases that the Government relies

8    upon, there is a case called Banki and there is a case called

9    Buck.  Both of those cases are out of the Southern District of

10   New York.

11             The Banki case is the first one that was issued back in

12   2010, so it is a little bit old, and the Buck case only cites

13   to the Banki case, in dicta, after it's already decided that

14   the defense testimony was not material and that the defendant

15   had an issue of unavailability.

16             But, in any case, Banki and Buck are distinguishable

17   because those cases involved pretrial -- sorry, trial, not

18   pretrial hearings.  And, of course, we are dealing here with a

19   pretrial hearing.

20             It is also worth noting that both Banki and Buck, the

21   defendant, did not raise his fifth or six amendment rights as

22   the defendant here has done.  So, the courts obviously don't

23   analyze that constitutional dimension the way your Honor will

24   be asked to.

25             And, I think, tellingly, there is a later case from the

1    Southern District of New York in 2020.  It is the U.S. v.

2    Donziger case, decided by Judge Preska.  And, in that case,

3    the Court said something that is pretty familiar.

4         It said that when the court is the trier of fact, like

5    in a bench trial, or in an evidentiary hearing on diplomatic

6    immunity, which is the case here, when the court is the trier

7    of fact, the proper course is for the court to err on the side

8    of admitting the evidence.  Because, when the court is the

9    trier of fact, you have much more freedom to determine

10   evidentiary issues, and you can accord whatever weight you

11   think is appropriate according to perceived reliability of the

12   evidence.

13        So, we think that's the appropriate course here, as

14   well, Your Honor, to go ahead and err on the side of admitting

15   this evidence.

16        The bottom line -- and I will end with this -- is that

17   the only real concern here that has been voiced by the

18   Government in its brief, if you read the brief, the only part

19   in the argument section is a concern about proper safeguards to

20   ensure the reliability of these proceedings.

21        And, frankly, that is a concern that the defendant

22   shares, as well.  That's why, in our reply brief, we have taken

23   this seriously, and we have proposed nine specific safeguards

24   to ensure the integrity of these proceedings.

25        And, I am not going to belabor all nine of them right

1   now.  I am sure we are going to have some back and forth in

2   discussing it.  But, right now, I would like to note that one

3   of the safeguards is that these witnesses will be sworn in by

4   district court staff as any other witness would be, that will

5   place these witnesses under the pain of a penalty of perjury.

6   And that, along with the other eight safeguards that we are

7   proposing, should ensure the integrity of the proceedings.

8           THE COURT:  All right, thank you.

9           All right.  Who is going to make the argument?

10          Mr. Lunkenheimer?

11          MR. LUNKENHEIMER:  Yes, your Honor.

12          Your Honor, the United States has opposed the taking of

13   live video testimony from Venezuela from the very beginning.

14          I think we have discussed this many times in open

15   court.

16          We understood the Court was open to that idea due to

17   its prior experience in the U.S. versus Khan matter,

18   11-CR 20331.  Your Honor, we -- the defendant has only wanted

19   to take the live testimony from Venezuela the whole time.  They

20   have done nothing to try to come up with some middle ground to

21   protect -- to quote from U.S. versus Guild, G-U-I-L-D, is that

22   you want to "protect the sanctity of the criminal proceedings."

23          And, we also want to provide assurances that the

24   proceedings maintain the appropriate level of formality and

25   accuracy.

1        And, they have only wanted to take live testimony from

2   Venezuela.  They never wanted to come to a middle ground and

3   take a videotaped deposition in a third country where all of us

4   could be with present before the witness with a videotape.

5        They have not even proposed having the witnesses cross

6   the border into Colombia to go to a U.S. consulate or embassy

7   where they could sit in a U.S. facility so that the sanctity of

8   the proceedings is assured, and had the live testimony from

9   there.  They have only wanted to take it from Venezuela, via

10  zoom, from day one.

11       It is not until our response to their motion where we

12  mentioned the safeguards of that, that they even proposed them.

13  They proposed these nine -- which we don't think are adequate

14  to assure the trustworthiness of the proceedings.

15       They talk about showing the video -- the room where the

16  witness would testify.  They will show it is empty, or having

17  two cameras, your Honor.

18       But, your Honor, a fellow judge in this same court

19  recently in the Alban Osio versus Nicholas Maduro, et al., Case

20  21-20706, civil, Gayles/Torres, they found that the Maduro

21  regime is a criminal enterprise.

22       So, the concern is how would we be assured that these

23  people, these witnesses are there on their own volition, of

24  their own free will then when they are alone in a hotel room

25  with a video technician in Venezuela?

1          How will we also assure that they are -- the oath

2   actually means something when, in Venezuela, they aren't

3   subject to extradition right now with the United States due to

4   diplomatic relations.  Defense counsel has not even proposed,

5   as in, I think, the Khan matter, where defense counsel,

6   themselves, actually were present in the live video testimony

7   was given until the feed was cut off.

8          There was some there, an officer of the court was

9   present with that witness, presumably, to assure that there is

10  no -- you know, there is no shenanigans going on behind the

11  scenes, that these were legitimately there on their own free

12  will to testify on behalf of the defendant.

13         So, your Honor, we oppose this live testimony from

14  Venezuela.  We think that the safeguards proposed by the

15  defendant for this pretrial evidentiary hearing are inadequate.

16  They never wanted to come to a middle ground to try and resolve

17  this in a reasonable fashion.  And, you know, that -- for those

18  reasons, your Honor, we would object to the testimony via Zoom

19  from Venezuela.

20         And, I would also note, your Honor, that the defense

21  counsel mentioned we did not have any objection to the

22  materiality of the testimony.

23         We did note, in footnote one of our filing, docket

24  entry 133, that we do -- you know, we do question the relevancy

25  or admissibility of these witnesses' testimony, in part based

1    on the first part of our filing and the -- I guess in response

2    to the motion to compel, where we don't think there is any

3    evidence that can be obtained that would show that Mr. Saab

4    enjoys diplomatic immunity from these proceedings.  But, also,

5    based on foundational purposes and other issues, normal

6    objections, we don't think these witnesses provide the proper

7    testimony that is needed for this Court to decide the matter.

8            THE COURT:  So, let's assume that they were going to

9    call these witnesses for the jury trial as defense witnesses,

10   and that there is no issue about their materiality.

11           And, they couldn't come to the United States, or they

12   filed a Rule 15 motion to take their depositions.  Wouldn't

13   that be done in Venezuela?

14           MR. LUNKENHEIMER:  Your Honor, I don't think that would

15   be done.

16           THE COURT:  How would we do that?

17           MR. LUNKENHEIMER:  Your Honor, we had offered to

18   propose a third country where the Venezuelans do have -- we are

19   understanding, from open source research, they can obtain visas

20   for Panama, Bahamas, Colombia.

21           THE COURT:  But, if they don't want to go to a

22   third-party -- these are third-party witnesses.  You can't

23   order them to go to another country.

24           What if they don't want to go to another country and

25   the defendant wants to call them?

1           They have, so, so -- wouldn't we have to do the

2     depositions in Venezuela, and then all these same concerns

3     about the oath and the Maduro government putting pressure on

4     them and everything else coming into play?

5           MR. LUNKENHEIMER:  Your Honor, I think that if they

6     didn't want to travel, I think there would be a question of

7     whether they are actually unavailable for the Rule 15

8     deposition.  But, putting that aside, your Honor, I think the

9     idea is for -- basically, the case law is that --

10          THE COURT:  Well, people who live in the United States

11    don't even have to travel a hundred miles within the country.

12    So, how would you say someone who doesn't want to go to another

13    country wouldn't be unavailable?

14          MR. LUNKENHEIMER:  Your Honor, I guess we would have to

15    litigate that issue.

16          But, I am just -- assuming that they are unavailable,

17    and that would be proven and found by the Court, while I don't

18    think Venezuela would be the proper place -- I don't think we

19    are allowed, the United States would not be allowed to travel

20    down there, considering the diplomatic relations.  So, that

21    would be problematic for a Rule 15 deposition.

22          THE COURT:  Right.  Exactly.  So, we still have the

23    same issues, and have to figure out some way to do it by video,

24    but with whatever other safeguards we can come up with to make

25    sure that there is at least some semblance of the ability.

1            And, plus, don't forget this is a nonjury evidentiary

2     hearing.  I mean, obviously, say, if you're in a prison, if

3     you could subpoena -- say some incident happened in a prison,

4     and one of the witnesses is serving a life sentence without

5     parole.

6            So, theoretically, you could argue, "Well, he doesn't

7     care what he says, if he gets prosecuted for perjury because he

8     has got nothing to lose, anyway."

9            So, there is always situations where a witness, even if

10    they are under oath and sitting in a courtroom, the oath is not

11    as meaningful to them as it is to other people.

12            That, certainly, is something I can consider in

13    deciding the credibility of the witnesses, if I think this is

14    some sham proceeding, or put up by the Government or something

15    else like that.  So, I don't think you have the same concerns

16    as you would in a jury trial.

17            MR. LUNKENHEIMER:  You Honor, I agree with a

18    pre-evidentiary hearing where you are the trier of facts.  I

19    think that is less concerning that a jury trial, your Honor.

20            To answer your question, my understanding, I think, at

21    a minimum, would be that one of the defendant's several

22    counsel, officers of this court, be present during the video

23    deposition in Venezuela.

24            THE COURT:  What about -- one of their suggestions was

25    to find an embassy that still has relations with Venezuela and

1    the United States, and have the deposition or the testimony

2    taken at that embassy?

3        MR. LUNKENHEIMER:  Your Honor, if the Court is inclined

4    to go that way, we would agree that's the minimum safeguard to

5    ensure the sanctity of the proceedings as opposed to an empty

6    room with an unknown video technician, and who know who is

7    outside the hotel room.

8        So, if the Court would provide that safeguard -- we

9    would disagree, it still might not in be enough.  But, that is

10   at least more than what they proposed in their reply.

11       THE COURT:  Okay.

12       Let me hear from the defense.

13       MS. FOLEY:  Thank you, your Honor.  The Government

14   speaks of a middle ground.  There is the middle ground.  We --

15   they have, for months, sort of pressured us to consider a

16   Rule 15 deposition.  There are a lot of reasons why we think

17   that this -- this middle ground, the Zoom testimony is superior

18   to a Rule 15 deposition.  It does not require the travel of

19   counsel, which can be tricky in this case, both for the

20   Government as well as defense counsel.

21       It is more flexible.  It is live testimony.

22       And, from -- certainly from a constitutional

23   perspective, your Honor, this Zoom is superior to Rule 15.

24       As long as adequate safeguards are in place, this

25   testimony can be taken live from Venezuela from a secure

1    location.  There can be adequate cameras in the room to ensure

2    that no monkey business is going on.

3         To the extent that there is a concern that was just

4    voiced about there being someone outside the room, pressuring

5    the witnesses, someone could be outside the room right now in

6    any court proceeding pressuring the witnesses.

7         But, all we can do is make sure that in that room, when

8    the witnesses are sworn under oath and giving their testimony,

9    that there are safeguards to ensure that it is freely given and

10   without coercion.

11        And, you know, look, the Government is contesting or

12   trying to litigate their case again, or this motion again on

13   its idea of merits of the diplomatic immunity.

14        We are not there yet.  The question is how do we

15   present the defendant's material favorable witnesses located in

16   Venezuela on his affirmative defense of diplomatic immunity?

17   And, out of all of the options available, this one has to be

18   the best.

19        THE COURT:  Okay.  So, I am going to generically grant

20   the motion to permit testimony by video conference.

21        The general idea is, yes, you can arrange for the

22   video, by video conference testimony of these two witnesses,

23   and other witnesses, if they become necessary; but, that

24   specific safeguards need to be in place.

25        You all can discuss with each other -- and, I think the

1  number one factor that you have to determine is where it is
2  going to take place.
3          So, I don't know if the defense can, on their own, find
4  an embassy, or if it has to be something the Government can do
5  to find a third-country embassy that would be willing to host
6  the depositions.
7          And, I know you say you want the person sworn in by the
8  court reporter or whoever, a judge or somebody here.  But, I
9  always thought they have to be -- having done this before, I
10  think they have to have somebody where they are who is
11  authorized to administer an oath under those state's or
12  country's laws, and properly identify the person so they can
13  say, "Yes, this is Joe Smith."
14          They can see that it is a valid ID, and then that
15  official notary -- or whatever the title is of that country --
16  will verify the identity and administer an oath there, because
17  that's where they are, and, where they are committing perjury
18  if they do commit perjury.
19          But, again, those details are something we can work out
20  later.  We have time.
21          But, I think the main -- and I spoke to our IT people
22  because I know when I did the testimony from Pakistan there was
23  all sorts of issues about encrypted, closed-circuit satellite
24  transmissions.  But now, we have our zoom.gov which is
25  encrypted and safe, they say.  So, we can use that and not have

1    the problem.

2          So, I am generically granting the motion, leaving open

3    all of the details relating to the safeguards that need to be

4    in place.

5          You all can work together.  It is now mid September.

6    When did we set the hearing for?

7          MR. LUNKENHEIMER:  December 12th, your Honor.

8          THE COURT:  So, if you have not resolved all of the

9    details, let me know by, like, October 20th -- October 21st.

10          MS. FOLEY:  21st, your Honor.

11          THE COURT:  21st.

12          So, if you have not reach an agreement on all the

13   details of how it is going to be done, then file a joint status

14   report saying, "These are the things we agree on, and here is

15   what we don't agree."

16          And, I will set it for hearing very quickly so that any

17   other logistics that have to be worked out based on whatever

18   ruling I make, we can have in place so we don't delay the

19   evidentiary hearing again.  Okay?

20          Anything else we can do this morning?

21          MR. LUNKENHEIMER:  Nothing on behalf of the United

22   States, your Honor.  Thank you.

23          MS. FOLEY:  No, your Honor.

24          THE COURT:  Okay.  Thank you all.

25          (Proceedings concluded at 9:26 a.m.)

```
 1                    C E R T I F I C A T E

 2

 3           I hereby certify that the foregoing is an

 4   accurate transcription of the proceedings in the

 5   above-entitled matter.

 6

 7

     September 21, 2022      /s/Sharon Velazco
 8   DATE                    SHARON VELAZCO, RPR, FPR
                             Official Court Reporter
 9                           United States District Court
                             400 North Miami Avenue
10                           8th Floor
                             Miami, Florida 33128
11

12

13                              _     _     _

14

15

16

17

18

19

20

21

22

23

24

25
```

## /

**/s/Sharon** [1] - 20:7

## 1

**1** [1] - 1:8
**10111** [2] - 1:24, 2:5
**11-CR** [1] - 10:18
**12G** [1] - 2:9
**12st** [1] - 19:7
**133** [1] - 12:24
**1400** [1] - 1:19
**14th** [1] - 4:19
**15** [6] - 13:12, 14:7, 14:21, 16:16, 16:18, 16:23
**15th** [1] - 2:12
**1990** [2] - 4:22, 5:2
**1:19-CR-20450** [1] - 1:2

## 2

**2-C** [1] - 2:12
**20005** [1] - 1:20
**2010** [1] - 8:12
**2020** [1] - 9:1
**2022** [1] - 1:5, 20:7
**2024** [1] - 6:20
**20331** [1] - 10:18
**20th** [1] - 19:9
**21** [2] - 1:5, 20:7
**21-20706** [1] - 11:20
**21st** [3] - 19:9, 19:10, 19:11
**25** [1] - 1:8

## 3

**33128** [2] - 2:18, 20:10
**33132** [2] - 1:16, 2:13
**33140** [1] - 2:9

## 4

**400** [2] - 2:18, 20:9
**45** [2] - 1:24, 2:5
**4th** [1] - 1:15

## 5

**555** [1] - 2:12
**5750** [1] - 2:8

## 7

**7th** [1] - 4:11

## 8

**8th** [2] - 1:20, 20:10

## 9

**99** [1] - 1:15
**9:00** [1] - 1:6
**9:26** [2] - 1:6, 19:25

## A

**a.m** [3] - 1:6, 19:25
**ability** [1] - 14:25
**above-entitled** [1] - 20:5
**abuse** [1] - 4:24
**accord** [1] - 9:10
**accorded** [1] - 5:18
**according** [1] - 9:11
**accuracy** [1] - 10:25
**accurate** [1] - 20:4
**accused** [2] - 4:25, 5:6
**additional** [3] - 4:12, 4:15, 4:17
**adequate** [3] - 11:13, 16:24, 17:1
**adequately** [1] - 5:16
**administer** [2] - 18:11, 18:16
**admissibility** [1] - 12:25
**admitting** [2] - 9:8, 9:14
**adversarial** [1] - 5:17
**agent** [1] - 3:9
**agree** [4] - 15:17, 16:4, 19:14, 19:15
**agreement** [1] - 19:12
**ahead** [1] - 9:14
**al** [1] - 11:19
**Alban** [1] - 11:19
**Alex** [3] - 3:5, 3:9, 3:16
**ALEX** [1] - 1:7
**ALEXANDER** [1] - 1:17
**alexander.kramer@ usdoj.gov** [1] - 1:21
**allow** [1] - 4:1
**allowed** [6] - 4:21, 4:25, 5:5, 6:3, 14:19
**alone** [1] - 11:24
**amendment** [1] - 8:21
**Amendment** [2] - 6:7, 6:8
**AMERICA** [1] - 1:4
**America** [1] - 3:5
**analyze** [1] - 8:23
**anonymized** [1] - 4:7
**answer** [1] - 15:20
**anticipated** [2] - 4:3, 4:16
**anyway** [1] - 15:8
**APPEARANCES** [2] - 1:13, 2:1
**apply** [1] - 7:3
**appointment** [2] - 6:18
**appropriate** [4] - 7:23, 9:11, 9:13, 10:24
**approved** [1] - 7:19
**argue** [1] - 15:6
**argument** [3] - 3:21, 9:19, 10:9
**arrange** [1] - 17:21
**aside** [1] - 14:8
**Assistant** [1] - 3:7
**assume** [1] - 13:8
**assuming** [1] - 14:16
**assurances** [1] - 10:23
**assure** [3] - 11:14, 12:1, 12:9
**assured** [2] - 11:8, 11:22
**attempt** [1] - 7:3
**Attorney** [1] - 3:8
**attorney** [1] - 3:9
**Attorney's** [1] - 1:15
**authorized** [1] - 18:11
**available** [1] - 17:17
**Avenue** [4] - 1:19, 2:8, 2:18, 20:9

## B

**Bahamas** [1] - 13:20
**Baker** [2] - 1:23, 2:4
**Banki** [5] - 8:8, 8:11, 8:13, 8:16, 8:20
**based** [3] - 12:25, 13:5, 19:17
**Beach** [1] - 2:9
**become** [1] - 17:23
**BEFORE** [1] - 1:11
**beginning** [1] - 10:13
**behalf** [2] - 12:12, 19:21
**behind** [1] - 12:10
**belabor** [1] - 9:25
**bench** [1] - 9:5
**best** [1] - 17:18
**bit** [1] - 8:12
**Bogota** [1] - 6:20

**Bond** [1] - 1:19
**border** [1] - 11:6
**bottom** [1] - 9:16
**brief** [5] - 4:11, 4:18, 9:18, 9:22
**Buck** [4] - 8:9, 8:12, 8:16, 8:20
**Building** [1] - 1:19
**business** [1] - 17:2
**BY** [2] - 1:10, 2:15

## C

**Callow** [1] - 3:9
**cameras** [2] - 11:17, 17:1
**care** [1] - 15:7
**CASE** [1] - 1:2
**Case** [1] - 11:19
**case** [19] - 4:23, 5:4, 6:1, 6:5, 8:8, 8:11, 8:12, 8:13, 8:16, 8:25, 9:2, 9:6, 14:9, 16:19, 17:12
**cases** [3] - 8:7, 8:9, 8:17
**CDC** [1] - 7:19
**certainly** [2] - 15:12, 16:22
**certify** [1] - 20:3
**child** [1] - 4:24
**circuit** [3] - 5:1, 5:14, 18:23
**cites** [1] - 8:12
**civil** [1] - 11:20
**clause** [3] - 5:24, 6:6, 6:7
**closed** [3] - 5:1, 5:14, 18:23
**closed-circuit** [1] - 18:23
**clunkier** [1] - 5:3
**coercion** [1] - 17:10
**colleague** [1] - 3:15
**colleagues** [1] - 3:16
**Collins** [1] - 2:8
**Colombia** [2] - 11:6, 13:20
**coming** [2] - 4:11, 14:4
**commit** [1] - 18:18
**committing** [1] - 18:17
**compel** [1] - 13:2
**compulsory** [1] - 6:7
**concern** [7] - 6:1, 6:2, 9:17, 9:19, 9:21, 11:22, 17:3
**concerning** [1] - 15:19

**concerns** [3] - 8:3, 14:2, 15:15
**concluded** [1] - 19:25
**CONFERENCE** [1] - 1:10
**conference** [3] - 4:21, 17:20, 17:22
**Conference** [1] - 3:23
**conferences** [1] - 7:11
**confrontation** [2] - 5:7, 5:24
**consider** [2] - 15:12, 16:15
**considering** [1] - 14:20
**constitutional** [3] - 8:3, 8:23, 16:22
**consulate** [1] - 11:6
**Cont'd** [1] - 2:1
**contest** [4] - 6:10, 6:13, 6:23, 7:22
**contesting** [1] - 17:11
**conversations** [1] - 7:10
**counsel** [6] - 12:4, 12:5, 12:21, 15:22, 16:19, 16:20
**country** [8] - 11:3, 13:18, 13:23, 13:24, 14:11, 14:13, 18:5, 18:15
**country's** [1] - 18:12
**course** [11] - 4:9, 5:2, 5:4, 5:20, 5:23, 5:24, 7:7, 7:25, 8:18, 9:7, 9:13
**Court** [12] - 2:17, 2:17, 4:22, 5:5, 9:3, 10:16, 13:7, 14:17, 16:3, 16:8, 20:8, 20:9
**COURT** [16] - 1:1, 3:2, 3:11, 3:18, 10:8, 13:8, 13:16, 13:21, 14:10, 14:22, 15:24, 16:11, 17:19, 19:8, 19:11, 19:24
**court** [14] - 5:6, 5:10, 5:15, 9:4, 9:6, 9:7, 9:8, 10:4, 10:15, 11:18, 12:8, 15:22, 17:6, 18:8
**courtroom** [1] - 15:10
**courts** [1] - 8:22
**COVID-19** [1] - 7:20
**Craig** [5] - 4:23, 5:4,

5:15, 5:23, 6:2
**credibility** [1] - 15:13
**criminal** [2] - 10:22,
11:21
**Criminal** [1] - 1:18
**cross** [3] - 5:13,
5:21, 11:5
**cross-examination**
[2] - 5:13, 5:21
**current** [1] - 7:20
**cut** [1] - 12:7

## D

**DATE** [1] - 20:8
**David** [1] - 3:15
**DAVID** [1] - 2:4
**DC** [1] - 1:20
**DEA** [2] - 3:9
**dealing** [1] - 8:18
**December** [1] - 19:7
**decide** [1] - 13:7
**decided** [3] - 4:23,
8:13, 9:2
**deciding** [1] - 15:13
**defendant** [18] - 1:8,
3:14, 3:16, 4:12, 4:14,
5:8, 5:25, 6:3, 6:25,
7:2, 8:14, 8:21, 8:22,
9:21, 10:18, 12:12,
12:15, 13:25
**DEFENDANT** [2] -
1:23, 2:3
**Defendant's** [1] -
3:22
**defendant's** [3] - 4:4,
15:21, 17:15
**DEFENDANT'S** [1] -
1:10
**defense** [14] - 3:12,
3:24, 4:4, 6:4, 8:14,
12:4, 12:5, 12:20,
13:9, 16:12, 16:20,
17:16, 18:3
**delay** [1] - 19:18
**demeanor** [2] - 5:13,
5:21
**Department** [4] -
1:18, 7:8, 7:9, 7:17
**deposition** [7] - 11:3,
14:8, 14:21, 15:23,
16:1, 16:16, 16:18
**depositions** [3] -
13:12, 14:2, 18:6
**details** [4] - 18:19,
19:3, 19:9, 19:13
**determine** [2] - 9:9,
18:1
**dicta** [1] - 8:13
**dimension** [1] - 8:23

**diplomatic** [11] - 4:4,
4:10, 4:18, 6:4, 6:21,
9:5, 12:4, 13:4, 14:20,
17:13, 17:16
**disagree** [1] - 16:9
**discover** [1] - 7:25
**discuss** [1] - 17:25
**discussed** [1] -
10:14
**discussing** [1] - 10:2
**dispute** [1] - 8:5
**distinguishable** [1] -
8:16
**District** [4] - 2:17,
8:9, 9:1, 20:9
**DISTRICT** [3] - 1:1,
1:1, 1:11
**district** [1] - 10:4
**Division** [1] - 1:18
**DIVISION** [1] - 1:2
**docket** [1] - 12:23
**documentation** [1] -
7:24
**DOJ** [1] - 3:8
**done** [6] - 8:22,
10:20, 13:13, 13:15,
18:9, 19:13
**Donzinger** [1] - 9:2
**down** [1] - 14:20
**drivkin@bakerlaw.
com** [1] - 2:6
**due** [4] - 4:19, 6:6,
10:16, 12:3
**during** [1] - 15:22

## E

**efforts** [1] - 7:1
**efoley@bakerlaw.
com** [1] - 1:25
**eight** [1] - 10:6
**either** [1] - 7:22
**elements** [4] - 5:7,
5:10, 5:16, 5:20
**ELIZABETH** [1] -
1:23
**Elizabeth** [1] - 3:13
**Embassy** [1] - 6:20
**embassy** [5] - 11:6,
15:25, 16:2, 18:4,
18:5
**emphasizing** [1] -
8:6
**empty** [2] - 11:16,
16:5
**encrypted** [2] -
18:23, 18:25
**end** [1] - 9:16
**enjoys** [1] - 13:4
**ensure** [6] - 9:20,

9:24, 10:7, 16:5, 17:1,
17:9
**ensured** [1] - 5:8
**ensures** [1] - 5:16
**enterprise** [1] -
11:21
**entire** [1] - 7:11
**entitled** [1] - 20:5
**entry** [1] - 12:24
**equivalent** [2] - 5:3,
5:18
**err** [2] - 9:7, 9:14
**ESQ** [6] - 1:14, 1:17,
1:23, 2:4, 2:7, 2:11
**Esq** [1] - 2:8
**essentially** [1] - 7:13
**et** [1] - 11:19
**evidence** [7] - 4:4,
5:21, 6:4, 9:8, 9:12,
9:15, 13:3
**evidentiary** [6] - 9:5,
9:10, 12:15, 15:1,
15:18, 19:19
**exact** [1] - 6:2
**exactly** [1] - 14:22
**examination** [2] -
5:13, 5:21
**example** [1] - 7:16
**expedite** [1] - 7:17
**expediting** [1] - 7:7
**expedition** [1] - 7:15
**experience** [1] -
10:17
**explored** [1] - 7:6
**extent** [1] - 17:3
**extradition** [1] - 12:3

## F

**face** [2] - 5:7
**face-to-face** [1] - 5:7
**facility** [1] - 11:7
**fact** [6] - 5:6, 6:1,
7:6, 9:4, 9:7, 9:9
**factor** [1] - 18:1
**facts** [2] - 7:14,
15:18
**familiar** [1] - 9:3
**far** [1] - 4:22
**fashion** [1] - 12:17
**favorable** [3] - 4:3,
6:3, 17:15
**feasible** [1] - 7:4
**feed** [1] - 12:7
**fellow** [1] - 11:18
**Fifth** [1] - 6:6
**fifth** [1] - 8:21
**figure** [1] - 14:23
**file** [1] - 19:13
**filed** [1] - 13:12

**filing** [2] - 12:23,
13:1
**first** [4] - 3:4, 3:24,
8:11, 13:1
**FL** [3] - 1:16, 2:9,
2:13
**flexible** [1] - 16:21
**Floor** [2] - 1:20,
20:10
**FLORIDA** [1] - 1:1
**Florida** [3] - 1:4,
2:18, 20:10
**FOLEY** [6] - 1:23,
3:13, 4:1, 16:13,
19:10, 19:23
**Foley** [1] - 3:13
**following** [1] - 3:1
**footnote** [1] - 12:23
**FOR** [3] - 1:14, 1:23,
2:3
**force** [1] - 3:10
**foregoing** [1] - 20:3
**forget** [1] - 15:1
**formality** [1] - 10:24
**forth** [2] - 6:15, 10:1
**foundational** [1] -
13:5
**FPR** [2] - 2:16, 20:8
**Francisco** [1] - 3:10
**frankly** [2] - 7:14,
9:21
**free** [2] - 11:24,
12:11
**freedom** [1] - 9:9
**freely** [1] - 17:9
**fully** [1] - 5:14
**functionally** [1] -
5:18

## G

**Gayles/Torres** [1] -
11:20
**general** [1] - 17:21
**generically** [2] -
17:19, 19:2
**given** [3] - 7:14,
12:7, 17:9
**Government** [15] -
3:6, 4:7, 6:10, 6:23,
6:25, 7:15, 7:23, 7:25,
8:7, 9:18, 15:14,
16:13, 16:20, 17:11,
18:4
**government** [3] -
7:10, 7:21, 14:3
**government's** [1] -
4:10
**grant** [1] - 17:19
**granted** [1] - 5:22

**granting** [1] - 19:2
**ground** [6] - 10:20,
11:2, 12:16, 16:14,
16:17
**guess** [2] - 13:1,
14:14
**guidelines** [1] - 7:20
**Guild** [1] - 10:21
**GUILD** [1] - 10:21

## H

**hear** [2] - 3:24, 16:12
**hearing** [10] - 6:21,
7:5, 8:19, 9:5, 12:15,
15:2, 15:18, 19:6,
19:16, 19:19
**hearings** [1] - 8:18
**hereby** [1] - 20:3
**Honor** [30] - 3:7,
3:13, 4:21, 5:22, 6:9,
8:6, 8:23, 9:14, 10:11,
10:12, 10:18, 11:17,
11:18, 12:13, 12:18,
12:20, 13:14, 13:17,
14:5, 14:8, 14:14,
15:17, 15:19, 16:3,
16:13, 16:23, 19:7,
19:10, 19:22, 19:23
**HONORABLE** [1] -
1:11
**host** [1] - 18:5
**Hostetler** [2] - 1:23,
2:4
**hotel** [2] - 11:24,
16:7
**hundred** [1] - 14:11

## I

**ID** [1] - 18:14
**idea** [4] - 10:16, 14:9,
17:13, 17:21
**identified** [2] - 4:6,
5:10
**identify** [2] - 4:15,
18:12
**identity** [1] - 18:16
**immunity** [9] - 4:5,
4:11, 4:18, 6:5, 6:21,
9:6, 13:4, 17:13,
17:16
**in-person** [1] - 5:19
**inadequate** [1] -
12:15
**incident** [1] - 15:3
**inclined** [1] - 16:3
**information** [1] - 8:1
**initial** [2] - 6:17, 6:18
**integrity** [3] - 5:8,

9:24, 10:7
**interview** [1] - 6:19
**involved** [2] - 4:24, 8:17
**issue** [6] - 6:16, 6:17, 8:15, 13:10, 14:15
**issued** [3] - 7:4, 7:20, 8:11
**issues** [6] - 5:24, 7:18, 9:10, 13:5, 14:23, 18:23
**issuing** [1] - 7:8
**IT** [1] - 18:21

## J

**Joe** [2] - 3:17, 18:13
**joe@ josephmschuster. com** [1] - 2:10
**joint** [1] - 19:13
**JOSEPH** [1] - 2:7
**Joseph** [1] - 2:8
**JR** [1] - 2:4
**judge** [2] - 11:18, 18:8
**Judge** [1] - 9:2
**JUDGE** [1] - 1:11
**jury** [3] - 13:9, 15:16, 15:19
**Justice** [2] - 1:18, 7:8

## K

**Khan** [2] - 10:17, 12:5
**Kramer** [1] - 3:9
**KRAMER** [1] - 1:17
**Kurt** [1] - 3:8
**KURT** [1] - 1:14
**kurt.lunkenheimer @usdoj.gov** [1] - 1:16

## L

**law** [1] - 14:9
**laws** [1] - 18:12
**least** [2] - 14:25, 16:10
**leaving** [1] - 19:2
**ledger** [1] - 6:14
**legitimately** [1] - 12:11
**less** [2] - 8:1, 15:19
**level** [1] - 10:24
**life** [1] - 15:4
**line** [1] - 9:16
**litigate** [2] - 14:15, 17:12

**live** [9] - 10:13, 10:19, 11:1, 11:8, 12:6, 12:13, 14:10, 16:21, 16:25
**LLP** [2] - 1:23, 2:4
**located** [2] - 4:2, 4:12, 17:15
**location** [1] - 17:1
**logistics** [1] - 19:17
**look** [1] - 17:11
**lose** [1] - 15:8
**LUNKENHEIMER** [11] - 1:14, 3:7, 10:11, 13:14, 13:17, 14:5, 14:14, 15:17, 16:3, 19:7, 19:21
**Lunkenheimer** [1] - 3:8
**lunkenheimer** [1] - 10:10

## M

**Maduro** [3] - 11:19, 11:20, 14:3
**main** [1] - 18:21
**maintain** [1] - 10:24
**manner** [1] - 5:18
**Maryland** [1] - 4:23
**mask** [1] - 3:19
**material** [4] - 4:3, 6:4, 8:14, 17:15
**materiality** [4] - 6:11, 8:4, 12:22, 13:10
**matter** [5] - 3:4, 10:17, 12:5, 13:7, 20:5
**mean** [1] - 15:2
**meaningful** [1] - 15:11
**means** [1] - 12:2
**medical** [1] - 8:2
**mentioned** [2] - 11:12, 12:21
**merits** [1] - 17:13
**MIAMI** [1] - 1:2
**Miami** [8] - 1:4, 1:16, 2:9, 2:13, 2:18, 2:18, 20:9, 20:10
**MICHAEL** [1] - 2:7
**mid** [1] - 19:5
**middle** [6] - 10:20, 11:2, 12:16, 16:14, 16:17
**might** [1] - 16:9
**miles** [1] - 14:11
**minimal** [1] - 7:1
**minimum** [2] - 15:21, 16:4
**monikers** [1] - 4:7

**monkey** [1] - 17:2
**months** [4] - 7:10, 7:14, 7:16, 16:15
**MORAN** [1] - 1:7
**Moran** [1] - 3:5
**morning** [8] - 3:2, 3:4, 3:7, 3:11, 3:13, 3:15, 3:18, 19:20
**MOTION** [1] - 1:10
**Motion** [1] - 3:22
**motion** [12] - 3:25, 4:1, 4:9, 4:14, 4:20, 5:22, 11:11, 13:2, 13:12, 17:12, 17:20, 19:2
**movement** [1] - 7:13
**MR** [10] - 3:7, 10:11, 13:14, 13:17, 14:5, 14:14, 15:17, 16:3, 19:7, 19:21
**MS** [5] - 3:13, 4:1, 16:13, 19:10, 19:23
**multiple** [1] - 7:11

## N

**N.W** [1] - 1:19
**NAIN** [1] - 1:7
**Nain** [1] - 3:5
**name** [1] - 4:15
**NE** [2] - 1:15, 2:12
**Neal** [1] - 3:16
**necessary** [1] - 17:23
**need** [5] - 4:12, 4:15, 17:24, 19:3
**needed** [1] - 13:7
**NEIL** [1] - 2:11
**neil@ neilmschuster.com** [1] - 2:13
**never** [5] - 7:24, 11:2, 12:16
**New** [5] - 1:19, 1:24, 2:5, 8:10, 9:1
**Nicholas** [1] - 11:19
**nine** [3] - 9:23, 9:25, 11:13
**NO** [1] - 1:2
**nonjury** [1] - 15:1
**normal** [1] - 13:5
**North** [2] - 2:18, 20:9
**notary** [1] - 18:15
**note** [3] - 10:2, 12:20, 12:23
**nothing** [1] - 10:20, 15:8, 19:21
**noting** [3] - 6:9, 6:12, 8:20
**November** [3] - 4:11,

4:19, 6:20
**number** [1] - 18:1
**NY** [2] - 1:24, 2:5

## O

**oath** [10] - 5:12, 5:20, 6:6, 12:1, 14:3, 15:10, 17:8, 18:11, 18:16
**object** [1] - 12:18
**objection** [1] - 12:21
**objections** [1] - 13:6
**observed** [1] - 5:14
**obtain** [2] - 7:1, 13:19
**obtained** [1] - 13:3
**obviously** [2] - 8:22, 15:2
**October** [3] - 6:20, 19:9
**OF** [2] - 1:1, 1:4
**offer** [1] - 6:3
**offered** [2] - 5:5, 13:17
**offering** [1] - 4:24
**Office** [1] - 1:15
**officer** [2] - 3:10, 12:8
**officers** [1] - 15:22
**Official** [1] - 20:8
**official** [2] - 2:17, 18:15
**old** [1] - 8:12
**one** [12] - 5:11, 6:15, 6:16, 8:11, 10:2, 11:10, 12:23, 15:4, 15:21, 15:24, 17:17, 18:1
**One** [2] - 4:8, 6:11
**open** [4] - 10:14, 10:16, 13:19, 19:2
**oppose** [1] - 12:13
**opposed** [2] - 10:12, 16:5
**opposite** [1] - 6:2
**opposition** [2] - 4:10, 6:10
**options** [1] - 17:17
**order** [1] - 13:23
**Osio** [1] - 11:19
**outside** [3] - 16:7, 17:4, 17:5
**own** [5] - 8:3, 11:23, 11:24, 12:11, 18:3

## P

**P.A** [1] - 2:8
**Pages** [1] - 1:8
**pain** [1] - 10:5

**Pakistan** [1] - 18:22
**Panama** [1] - 13:20
**parole** [1] - 15:5
**part** [3] - 9:18, 12:25, 13:1
**party** [3] - 8:1, 13:22
**penalty** [1] - 10:5
**people** [4] - 11:23, 14:10, 15:11, 18:21
**perceived** [1] - 9:11
**perjury** [4] - 10:5, 15:7, 18:17, 18:18
**permit** [1] - 17:20
**Permit** [1] - 3:22
**PERMIT** [1] - 1:10
**person** [3] - 5:19, 18:7, 18:12
**perspective** [1] - 16:23
**place** [8] - 6:22, 10:5, 14:18, 16:24, 17:24, 18:2, 19:4, 19:18
**placed** [1] - 5:11
**Plaintiff** [1] - 1:5
**PLAINTIFF** [1] - 1:14
**play** [1] - 14:4
**Plaza** [2] - 1:24, 2:5
**plus** [1] - 15:1
**point** [1] - 7:14
**possibility** [1] - 7:6
**possible** [1] - 7:16
**pre** [1] - 15:18
**pre-evidentiary** [1] - 15:18
**presence** [1] - 5:15
**present** [6] - 5:22, 11:4, 12:6, 12:9, 15:22, 17:15
**presidential** [1] - 7:21
**Preska** [1] - 9:2
**pressure** [1] - 14:3
**pressured** [1] - 16:15
**pressuring** [2] - 17:4, 17:6
**presumably** [1] - 12:9
**pretrial** [4] - 8:17, 8:18, 8:19, 12:15
**pretty** [1] - 9:3
**PRICE** [1] - 1:23
**primary** [1] - 8:7
**prison** [2] - 15:2, 15:3
**privacy** [1] - 8:3
**private** [1] - 8:2
**problem** [1] - 19:1
**problematic** [1] -

14:21
  **proceeding** [2] - 15:14, 17:6
  **proceedings** [12] - 3:1, 5:9, 9:20, 9:24, 10:7, 10:22, 10:24, 11:8, 11:14, 13:4, 16:5, 20:4
  **Proceedings** [1] - 19:25
  **process** [2] - 6:6, 6:7
  **proclamation** [1] - 7:21
  **proper** [4] - 9:7, 9:19, 13:6, 14:18
  **properly** [1] - 18:12
  **propose** [1] - 13:18
  **proposed** [7] - 9:23, 11:5, 11:12, 11:13, 12:4, 12:14, 16:10
  **proposing** [3] - 4:17, 5:25, 10:7
  **prosecuted** [1] - 15:7
  **protect** [2] - 10:21, 10:22
  **proven** [1] - 14:17
  **provide** [5] - 4:3, 4:16, 10:23, 13:6, 16:8
  **provided** [1] - 7:24
  **purposes** [1] - 13:5
  **pursuant** [2] - 7:20, 7:21
  **put** [1] - 15:14
  **putting** [2] - 14:3, 14:8

**Q**

  **quickly** [1] - 19:16
  **quote** [1] - 10:21

**R**

  **raise** [2] - 8:2, 8:21
  **reach** [1] - 19:12
  **read** [1] - 9:18
  **real** [1] - 9:17
  **reality** [1] - 6:24
  **really** [5] - 5:11, 6:1, 6:12, 6:15, 8:4
  **reasonable** [1] - 12:17
  **reasons** [3] - 6:15, 12:18, 16:16
  **received** [2] - 7:19, 7:22
  **recently** [1] - 11:19
  **recognizes** [1] - 4:14

  **recognizing** [1] - 4:9
  **records** [1] - 8:2
  **regime** [1] - 11:21
  **relating** [1] - 19:3
  **relations** [3] - 12:4, 14:20, 15:25
  **relevancy** [1] - 12:24
  **reliability** [3] - 5:9, 9:11, 9:20
  **reliable** [1] - 5:17
  **relies** [1] - 8:7
  **reply** [3] - 4:18, 9:22, 16:10
  **report** [1] - 19:14
  **REPORTED** [1] - 2:15
  **reporter** [1] - 18:8
  **Reporter** [2] - 2:17, 20:8
  **require** [1] - 16:18
  **research** [1] - 13:19
  **resolve** [1] - 12:16
  **resolved** [1] - 19:8
  **response** [2] - 11:11, 13:1
  **responsible** [1] - 7:8
  **rights** [2] - 6:6, 8:21
  **rigorous** [1] - 5:17
  **Rincon** [1] - 3:10
  **RIVKIN** [1] - 2:4
  **Rivkin** [1] - 3:15
  **ROBERT** [1] - 1:11
  **Rockefeller** [2] - 1:24, 2:5
  **room** [8] - 11:15, 11:24, 16:6, 16:7, 17:1, 17:4, 17:5, 17:7
  **RPR** [2] - 2:16, 20:8
  **Rule** [6] - 13:12, 14:7, 14:21, 16:16, 16:18, 16:23
  **ruling** [1] - 19:18

**S**

  **Saab** [3] - 3:5, 3:16, 13:3
  **SAAB** [1] - 1:7
  **safe** [1] - 18:25
  **safeguard** [2] - 16:4, 16:8
  **safeguards** [11] - 9:19, 9:23, 10:3, 10:6, 11:12, 12:14, 14:24, 16:24, 17:9, 17:24, 19:3
  **sanctity** [3] - 10:22, 11:7, 16:5
  **satellite** [1] - 18:23
  **scenes** [1] - 12:11

  **scheduled** [1] - 6:22
  **SCHUSTER** [2] - 2:7, 2:11
  **Schuster** [3] - 2:8, 3:16, 3:17
  **SCOLA** [1] - 1:11
  **seated** [1] - 3:3
  **second** [1] - 5:12
  **section** [1] - 9:19
  **secure** [1] - 16:25
  **see** [1] - 18:14
  **seeking** [1] - 4:1
  **semblance** [1] - 14:25
  **sentence** [1] - 15:4
  **September** [3] - 1:5, 19:5, 20:7
  **serious** [1] - 8:2
  **seriously** [1] - 9:23
  **serving** [1] - 15:4
  **set** [3] - 6:15, 19:6, 19:16
  **several** [1] - 15:21
  **sham** [1] - 15:14
  **shares** [1] - 9:22
  **SHARON** [2] - 2:16, 20:8
  **shenanigans** [1] - 12:10
  **show** [3] - 7:15, 11:16, 13:3
  **showing** [1] - 11:15
  **side** [3] - 6:14, 9:7, 9:14
  **sit** [1] - 11:7
  **sitting** [1] - 15:10
  **situations** [1] - 15:9
  **six** [1] - 8:21
  **Sixth** [1] - 6:7
  **Smith** [1] - 18:13
  **someone** [3] - 14:12, 17:4, 17:5
  **sorry** [1] - 8:17
  **sort** [2] - 5:2, 16:15
  **sorts** [1] - 18:23
  **source** [1] - 13:19
  **SOUTHERN** [1] - 1:1
  **Southern** [2] - 8:9, 9:1
  **speaks** [1] - 16:14
  **special** [1] - 3:9
  **specific** [2] - 9:23, 17:24
  **staff** [1] - 10:4
  **started** [1] - 6:19
  **State** [2] - 7:9, 7:17
  **state's** [1] - 18:11
  **States** [11] - 2:17, 3:5, 3:8, 10:12, 12:3,

13:11, 14:10, 14:19, 16:1, 19:22, 20:9
  **STATES** [3] - 1:1, 1:4, 1:11
  **status** [1] - 19:13
  **STENOGRAPHICA LLY** [1] - 2:15
  **still** [3] - 14:22, 15:25, 16:9
  **Street** [2] - 1:15, 2:12
  **subject** [3] - 5:12, 5:17, 12:3
  **subpoena** [1] - 15:3
  **substance** [2] - 4:16, 4:20
  **suggestions** [1] - 15:24
  **Suite** [2] - 2:9, 2:12
  **summary** [1] - 4:16
  **summer** [1] - 7:11
  **superior** [2] - 16:17, 16:23
  **supposed** [1] - 7:2
  **Supreme** [1] - 4:22
  **sworn** [3] - 10:3, 17:8, 18:7

**T**

  **task** [1] - 3:10
  **technician** [2] - 11:25, 16:6
  **television** [2] - 5:1, 5:14
  **tellingly** [1] - 8:25
  **testify** [2] - 11:16, 12:12
  **TESTIMONY** [1] - 1:10
  **Testimony** [1] - 3:22
  **testimony** [28] - 4:2, 4:21, 4:24, 4:25, 5:5, 5:9, 5:16, 5:19, 5:25, 8:14, 10:13, 10:19, 11:1, 11:8, 12:6, 12:13, 12:18, 12:22, 12:25, 13:7, 16:1, 16:17, 16:21, 16:25, 17:8, 17:20, 17:22, 18:22
  **testing** [1] - 5:17
  **THE** [19] - 1:11, 1:14, 1:23, 2:3, 3:2, 3:11, 3:18, 10:8, 13:8, 13:16, 13:21, 14:10, 14:22, 15:24, 16:11, 17:19, 19:8, 19:11, 19:24
  **themselves** [1] - 12:6

  **theoretically** [1] - 15:6
  **third** [7] - 5:13, 8:1, 11:3, 13:18, 13:22, 18:5
  **third-country** [1] - 18:5
  **third-party** [3] - 8:1, 13:22
  **three** [4] - 5:11, 5:16, 5:20, 7:10
  **title** [1] - 18:15
  **TO** [1] - 1:10
  **together** [1] - 19:5
  **transcription** [1] - 20:4
  **transmissions** [1] - 18:24
  **travel** [4] - 14:6, 14:11, 14:19, 16:18
  **trial** [6] - 3:8, 8:17, 9:5, 13:9, 15:16, 15:19
  **tricky** [1] - 16:19
  **trier** [4] - 9:4, 9:6, 9:9, 15:18
  **trustworthiness** [1] - 11:14
  **try** [2] - 10:20, 12:16
  **trying** [1] - 17:12
  **turning** [1] - 4:20
  **two** [6] - 4:6, 6:15, 6:21, 8:7, 11:17, 17:22
  **Two** [2] - 4:8, 6:11

**U**

  **U.S** [6] - 6:20, 9:1, 10:17, 10:21, 11:6, 11:7
  **u.S** [1] - 1:18
  **unavailability** [3] - 6:14, 8:4, 8:15
  **unavailable** [5] - 6:13, 6:15, 14:7, 14:13, 14:16
  **under** [6] - 5:12, 6:6, 10:5, 15:10, 17:8, 18:11
  **understood** [1] - 10:16
  **united** [1] - 2:17
  **UNITED** [3] - 1:1, 1:4, 1:11
  **United** [10] - 3:4, 3:8, 10:12, 12:3, 13:11, 14:10, 14:19, 16:1, 19:21, 20:9
  **unknown** [1] - 16:6

**unlike** [2] - 5:23, 8:7
**up** [4] - 7:15, 10:20, 14:24, 15:14
**US** [1] - 6:19

## V

**vaccination** [3] - 6:16, 7:18, 7:24
**vaccines** [2] - 7:19, 7:23
**valid** [1] - 18:14
**VELAZCO** [2] - 2:16, 20:8
**Velazco** [1] - 20:7
**Venezuela** [17] - 4:2, 4:13, 10:13, 10:19, 11:2, 11:9, 11:25, 12:2, 12:14, 12:19, 13:13, 14:2, 14:18, 15:23, 15:25, 16:25, 17:16
**Venezuelans** [1] - 13:18
**verify** [1] - 18:16
**versus** [5] - 3:5, 4:23, 10:17, 10:21, 11:19
**via** [2] - 11:9, 12:18
**video** [11] - 4:21, 10:13, 11:15, 11:25, 12:6, 14:23, 15:22, 16:6, 17:20, 17:22
**Video** [1] - 3:22
**VIDEO** [1] - 1:10
**videotape** [1] - 11:4
**videotaped** [1] - 11:3
**violate** [1] - 6:5
**visa** [5] - 6:16, 6:17, 6:19, 7:3, 7:4
**visas** [6] - 7:1, 7:3, 7:7, 7:9, 7:17, 13:19
**voiced** [2] - 9:17, 17:4
**volition** [1] - 11:23
**vs** [1] - 1:6

## W

**wants** [1] - 13:25
**Washington** [1] - 1:20
**weight** [1] - 9:10
**welcome** [1] - 3:2
**whole** [1] - 10:19
**William** [1] - 3:9
**willing** [1] - 18:5
**witness** [8] - 4:24, 5:11, 5:12, 10:4, 11:4, 11:16, 12:9, 15:9

**Witness** [5] - 3:22, 4:8, 6:11
**WITNESS** [1] - 1:10
**witness'** [1] - 5:13
**witnesses** [26] - 4:2, 4:3, 4:6, 4:12, 4:15, 4:17, 6:13, 6:18, 7:18, 8:1, 10:3, 10:5, 11:5, 11:23, 13:6, 13:9, 13:22, 15:4, 15:13, 17:5, 17:6, 17:8, 17:15, 17:22, 17:23
**witnesses'** [1] - 12:25
**worth** [4] - 6:9, 6:12, 8:6, 8:20

## Y

**years** [2] - 4:22, 6:21
**York** [5] - 1:19, 1:24, 2:5, 8:10, 9:1

## Z

**Zoom** [4] - 5:22, 12:18, 16:17, 16:23
**zoom** [3] - 4:2, 5:3, 11:10
**zoom.gov** [1] - 18:24

5